**GENERAL MOTORS CORP., FRIGIDAIRE DIVISION**

v.

**UNITED STATES.**

No. 47657.

United States Court of Claims.

June 8, 1954.

Newell W. Ellison, Washington, D. C., for plaintiff. Henry M. Hogan, New York City, Daniel M. Gribbon, Calvert Thomas, Detroit, Mich., Donald C. Alexander, and Covington & Burling, Washington, D. C., were on the briefs.

J. W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe and Joseph H. Sheppard, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues to recover certain manufacturers' excise taxes paid by it for the period May 10, 1937, through December 31, 1941. It manufactured electric refrigerators which were subject to a manufacturer's excise tax imposed by Section 608 of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Acts, page 611, until March 1939, and thereafter by Section 3405 of the Internal Revenue Code, 26 U.S.C.A. The part of the taxes in controversy were those attributable to a $5 charge which the plaintiff made in the sale of each refrigerator for a warranty which will presently be described.

In the sale of a refrigerator, the plaintiff included a certificate which comprised a warranty of all parts of the refrigerator except the sealed-in refrigerating unit for one year, and an agreement to repair or replace the refrigerating unit in the event that that unit became inoperative within five years following the date of the refrigerator's delivery to the original householder purchaser. The latter agreement was designated in the certificate as the "Five-Year Protection Plan." The Five-Year Protection Plan was priced at $5 by the plaintiff, that price was separtely stated on the plaintiff's invoices to its vendees, and all persons buying the refrigerators were obliged, with exceptions not here material, to pay for the Protection Plan.

In 1933 the plaintiff had offered a warranty for one, two, or three years, at $6 a year, at the option of the purchaser. In 1935 it offered a four-year warranty. for $10, still at the option of the purchaser. In 1936 it adopted the plan which is here involved.

The plaintiff says that it sold refrigerators and "something else," and that that something else was not within the category of things subject to the manufacturer's excise tax. We think that what the plaintiff sold was a warranted refrigerator, and not a refrigerator and something else. In any sale of new merchandise, there is an implied warranty of fitness. In the sale of the refrigerators here in question, that implied warranty was replaced by an express warranty of all parts of the refrigerator for one year. This express warranty may have been more, or less, extensive than the warranty which the law would have read into the sale by implication, if there had been no express warranty. One may suppose, for exam-.

ple, that if the cabinet of a refrigerator corroded within two years that would show that it was unfit for the purpose for which it was sold. As to other parts, the one-year warranty may have been for a longer period than the implied warranty would have covered.

■ The plaintiff does not claim that some portion of the sale price should be tax free because of the express warranty for one year. It does, however, make such a claim as to the five-year warranty of the sealed-in mechanical unit. We see no difference whatever between the two warranties, nor between the two express warranties, on the one hand, and the warranty which the law would, in the absence of an express warranty, have attached to the sale, on the other hand. To be sure, the plaintiff assigned, for its accounting purposes, a five-dollar price to the five-year warranty. That is certainly immaterial. If any of these warranties were "something else," in addition to the refrigerators, within the meaning of the tax statute, the tax-free price of that something else would have to be determined in some way other than by arbitrary assignment by the seller in cases where the buyer has no choice and therefore no part in the fixing of the price of the "something else."

If a manufacturer with a lesser reputation than General Motors attempted to sell refrigerators intrinsically as good as those sold by General Motors, it would almost certainly have to sell them at a lower price in order to compete successfully. Because its price was lower, it would pay less tax. General Motors could say, truthfully, that the purchaser of a General Motors refrigerator was getting a refrigerator and "something else," viz. the feeling of security arising from the fact that the manufacturer had a fine reputation. But General Motors could not assign a price to that something else and claim that that part of the sales price of its refrigerators was tax free.

The excise tax statute here involved would be indeed difficult of administration if the several kinds and extents of warranties by implication, by custom of the trade, and by express agreement, attached to sales of products, could be priced and the prices deducted from the taxable price of the product sold. In the instant case, several years' experience with the five-dollar price assigned by the plaintiff to the five-year warranty showed that it yielded a profit of more than 100 percent above the cost of fulfilling the warranty. Whether that is the plaintiff's normal profit on what it sells, we do not know. How much the one-year warranty added to the selling price of the refrigerators and how much it cost to fulfill it, we do not know. We think that Congress did not intend that the taxing authorities should have to concern themselves with those problems.

The precedents cited by the plaintiff relate to combinations of two tangible objects, one taxable and the other not, such as costume jewelry and dresses, pencils and notebooks, and fur trimming on cloth coats. In those cases the "something else" was obvious and tangible.

The plaintiff's alternative claim is not valid. It is based upon Section 3441(a) of the Internal Revenue Code, 26 U.S. C.A., which says:

"In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Commissioner, in accordance with the regulations."

■ We think that the five-dollar charge here in question is not of the nature of a transportation, delivery, insur-

ance, or installation charge, and is therefore not covered by the words "or other charge" which appear in the sentence excluding certain charges. The five-dollar charge was included in the price of the refrigerators when they were packed ready for shipment and the paper containing the contract of warranty was packed in the refrigerator.

■ We think, however, that the plaintiff may recover on its claim that it is entitled to a credit under Section 3443(a) (2) of the Internal Revenue Code, 26 U.S.C.A. That section says that "when the price * * * is readjusted * * * by a *bona fide* discount, rebate, or allowance", the taxable price shall be reduced by the amount of the readjustment. When an article is sold with a warranty, and fulfillment of the warranty costs the seller a certain sum, he has in fact received for the article only the amount by which the sale price exceeded the cost of fulfilling the warranty. He has, in effect, given the purchaser an "allowance" when he has spent money for his benefit. Here the findings show that the plaintiff expended $4,628,-797.83 in fulfilling its five-year warranties. The Government says that some of the items shown in finding 51, making up the named sum, were improperly charged as costs of fulfilling the warranties. But the Government has stipulated that these expenses were "incurred by the plaintiff in discharging its obligations under the Protection Plan." It has not asked to be relieved from its stipulation.

The plaintiff is entitled to recover. Entry of judgment will be suspended to await the filing of a stipulation by the parties showing the amount due the plaintiff, in accordance with the foregoing opinion and the following Findings of Fact.

It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

WHITAKER, Judge (dissenting).

I cannot agree with the opinion of the majority. The purchaser of a refrigerator got for his money, not only a refrigerator, but also the seller's agreement that it would keep the refrigerator in good repair for a period of five years. This was an obligation over and beyond the usual manufacturer's warranty of its product.

There is an implied warranty on every sale by a manufacturer that the article is free from defects in workmanship and material. Many times these defects can be discovered only from a use of the article, and in the custom of the various trades certain periods of time are allowed for these defects to show up. If they show up within the time allowed, the manufacturer must remedy them at his own expense. If they do not show up within this time, it is presumed the break-down was not occasioned by faulty manufacture, but by something else, in which event the maker is relieved from responsibility.

In the case of automobiles, for instance, the warranty time is ordinarily 90 days, but in the case of an electric refrigerator the standard time is one year. If the machine becomes defective after the expiration of one year, the purchaser must make the necessary repairs at his own expense.

This was the rule obtaining in the case of defendant's refrigerators until the year 1933. If, prior to that time, one of their refrigerators went bad after it had been in use for more than a year, it had to be repaired at the expense of the purchaser. Ordinarily the purchaser had the repair work done by the retail dealer or the distributor, but sometimes it was done by an outside party; but in any event it was done at the purchaser's expense.

The quality of the repair work thus done and the cost of it was causing an unfavorable reaction toward plaintiff's machines, and partly for this reason plaintiff decided to make available to a

purchaser its own repair facilities. At first it offered to a purchaser an agreement to keep the machine in repair for one year after the expiration of the warranty period, or for two years, or for three years, as the purchaser might elect; or the purchaser might refuse all of these proffered agreements, and have any necessary repairs made by any person he might choose.

If the purchaser accepted any of the agreements offered by plaintiff, he was required to pay therefor $6.00 per year. If the purchaser took the three-year agreement, it would thus cost him $18.00.

Plaintiff then in 1935 determined it could offer a purchaser a four-year agreement and at the price of $10.00, instead of the former price of $18.00 for three years. This it did. Some purchasers took advantage of it and some did not.

In the following year, 1936, plaintiff concluded that if all of its purchasers of refrigerators took its four-year maintenance agreement, it could further reduce its price to $5.00. Since under previous plans a substantial number of purchasers of refrigerators had not accepted the maintenance agreements, plaintiff, in order to put the $5.00 plan into effect, found it necessary to require that all purchasers of refrigerators enter into the maintenance agreement. So, from then on what had before been optional, now became obligatory; but the price of the agreement was reduced to $5.00. It was thus successively reduced from $18.00 for a three-year agreement to $10.00 for a four-year agreement, and then to $5.00 for a four-year agreement.

From this recitation of facts it would seem apparent that what the plaintiff sold was not only a refrigerator but also an agreement to keep the refrigerator in good condition for four years, in addition to the warranty period of one year.

This was of value to the purchaser and it cost the plaintiff a substantial sum of money to fulfill it. Just how much it had cost purchasers to keep their machines in repair prior to 1933 does not appear, but plaintiff's agreement must have saved them a considerable sum because 93 percent of the multiple-unit purchasers, who had the option of entering into the agreement or not, entered into it.

The record does show that it cost plaintiff $4,628,797.83 to fulfill its obligation under the agreements. This was an average cost of $65.00 for each unit repaired. That plaintiff was able to enter into an agreement to repair for $5.00, whereas it cost it $65.00, is explained by the relatively small number of machines that needed repair within the contract term. The total amount collected on the agreements was $10,687,115.00.

It is true that plaintiff made a profit of more than 100 percent on the agreements, but it cannot be said that an agreement which it cost plaintiff $4,628,797.83 to perform was not something substantial over and above the sale of the refrigerators. Except for these agreements, plaintiff would not have been required to expend this $4,628,797.83.

Nor can it be said that the purchaser did not receive something of substantial value in addition to the refrigerator when he paid $5.00 for plaintiff's agreement to do something which might cost it $65.00 to do.

Evidently these agreements were not a subterfuge to increase the price of the refrigerators.

It may be further said that on all sales of refrigerators these repair agreements were invoiced separately, and the amounts received from them and the cost of their performance were entered on plaintiff's books in an account separate from the account of refrigerator sales.

The cases relied on by defendant are not controlling. In Lash's Products Company v. United States, 64 Ct.Cl. 252, affirmed 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251, the purchaser secured for his money only the article purchased which in that case was a soft drink. In

that case the Supreme Court said, "The amount added [to the purchase price] because of the tax is paid to get the goods and for nothing else." That is not true here. The purchaser got something in addition to a refrigerator. He got an agreement to keep it in repair for four years, in addition to the customary warranty period. If an automobile dealer agrees to keep my car in repair for four years, can it be said that he has sold me nothing but an automobile?

It is also obvious that the selling and advertising expenses that go into the price of an article are not things the purchaser gets in addition to the product—which was the question involved in Fitch Company v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472.

This opinion is in line with rulings of the Internal Revenue Service in comparable cases.

In S.T. 943, 1952—1 C.B. 221, pencils subject to tax "were sold by the manufacturer as a unit" with spring loaded reels or notebooks not subject to tax. The Bureau ruled that the tax attached only to "that portion of the manufacturer's sales price of the unit which is properly allocable to the taxable article."

Rev.Rul. 204, 1953—20 I.R.B. 25, a retailer of taxable silverware gave to the purchaser a non-taxable article as a sales incentive. It was ruled that the transaction constituted a sale of the silverware and a non-taxable article at a lump sum price, and that the tax should be measured only by the portion of the total amount received that was attributable to the silverware. Clearly the purchaser here had to pay the full amount to get the silverware and could not obtain the non-taxable article separately. But the tax was not imposed upon the full amount paid by the purchaser because for that amount the purchaser received something other than the taxable article.

In Rev.Rul. 224, 1953—21 I.R.B. 16, phonograph mechanisms, which are taxable under section 3404(b) of the Internal Revenue Code, were combined with

player attachments, which were not taxable, and were sold as a unit for a single price. The tax was ruled to apply only to the portion of the price attributable to the mechanism, notwithstanding the mechanism and the attachment were intended to be used together and the particular mechanism could be obtained only through payment of an amount that included the price of the non-taxable attachment.

See also S.T. 572, XI–2 C.B. 469, 1932; and Rev.Rul. 54–100, 1954—11 I.R.B. 12.

I am authorized to say that LITTLETON, Judge, joins in this dissenting opinion.