GENERAL MOTORS CORPORATION,
FRIGIDAIRE DIVISION,

v.

The UNITED STATES.

No. 55–56.

United States Court of Claims.

Jan. 16, 1957.

Newell W. Ellison, Washington, D. C., for plaintiff. Henry M. Hogan, Detroit, Mich., Daniel M. Gribbon, Washington, D. C., Calvert Thomas, and J. C. Siegesmund, Jr., Detroit, Mich., were on the briefs.

J. W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

Thomas M. Cooley, II and A. Byrne Litschgi, Washington, D. C., amicus curiae for Federal Excise Tax Council, Inc.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff sues to recover excise taxes paid on the sale of electric refrigerators. It claims in its second cause of action it is entitled to a deduction from the sales price of amounts spent by it to discharge its obligation under the one-year warranty of certain parts of the refrigerators.

For some time prior to 1936 it had been the custom of the trade to warrant all parts of electric refrigerators for a period of one year. This custom continued until after the years here involved as to all parts except the hermetically sealed freezing units; but in 1936, pursuant to a special agreement, which plaintiff called a "protection plan", these units were warranted for an additional period of four years, for which additional warranty a charge of $5 was made.

Whether this $5 was subject to the excise tax was the question presented in General Motors Corp., etc. v. United States, 121 F.Supp. 932, 128 Ct.Cl. 465. We held that plaintiff was entitled to an "allowance" or rebate of that part of the sales tax that was collected on its service charge in addition to the usual one-year warranty. In the court's opinion, 128 Ct.Cl. on page 469, 121 F.Supp. on page 935, the following language was used:

"When an article is sold with a warranty, and fulfillment of the warranty costs the seller a certain sum, he has in fact received for the article only the amount by which the sale price exceeded the cost of fulfilling the warranty. He has, in effect, given the purchaser an 'allowance' when he has spent money for his benefit."

On the basis of this holding, plaintiff now claims it is entitled to deduct from the sales price the amount it spent in fulfilling the customary one-year warranty on all parts of the refrigerator. It claims they were "allowances" under section 3443(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3443 (a) (2).

This new claim advanced by plaintiff has caused us to reconsider our holding that plaintiff was entitled to an "allowance" on account of the amount spent in the discharge of its obligation under the extra four-year warranty.

We have come to the conclusion that we were wrong in holding that plaintiff was entitled to this as an "allowance". We are now of opinion that this charge was not an allowance to be deducted from the sale price, because it was not a part of the sales price, but was an extra charge for an agreement to keep certain parts of the refrigerators in repair beyond the period of the usual manufacturer's warranty.

We now think we should have held in the former case that an excise tax was not properly assessed on this $5 charge, but with the limitation now to be mentioned.

In the former case some of us were disturbed by the opportunity such a holding offered to a manufacturer to assert that a part of the actual sales price was a charge for services, when in fact it was not, and thus escape the excise tax. In now holding that a manufacturer is entitled to make a charge for an agreement to render services over and above the usual manufacturer's warranty, we do so subject to the limitation that this additional agreement must bear a close relationship to the actual cost of rendering the service. When so limited, as of course it must be, the opportunity for evasion of the excise tax practically disappears.

By this, we by no means intend to say that General Motors Corporation's charge for this extra service was a subterfuge to escape the excise tax. The company's experience in years prior to putting into effect this $5 charge for the extra service, and its prior handling of repairs to its refrigerators, show that

this extra charge was not a subterfuge to escape the excise tax.

Prior to 1933 all refrigerators sold by plaintiff were sold with a one-year warranty. If one of their refrigerators became defective after it had been in use for more than a year, it had to be repaired at the expense of the purchaser. Ordinarily, the purchaser had the repair work done by the retail dealer or the distributor, but sometimes it was done by an outside party; but, in any event, it was always done at the purchaser's expense.

The quality of the repair work thus done, and the cost of it, was causing an unfavorable reaction toward plaintiff's refrigerators and, partly for this reason, plaintiff decided to make available to a purchaser its own repair facilities. It first offered to a purchaser an agreement to keep the machine in repair for one additional year, over and above the usual warranty for one year, or for two additional years, or for three additional years, as the purchaser might elect; but the purchaser might reject the offer and have the necessary repairs made by any person he chose.

If the purchaser accepted any of the agreements offered by plaintiff, he was required to pay therefor $6 per year. If the purchaser took the three-year agreement, it would have, therefore, cost him $18.

Plaintiff's experience between 1933 and 1935 showed it that the $18 charge was too high and that it could afford to offer a purchaser an agreement to keep the machine in repair for an additional four years at the price of $10, instead of the former price of $18 for three years. It, accordingly, made such an offer. Some purchasers took advantage of it, and some did not.

In the following year, 1936, plaintiff concluded that if all of its purchasers of refrigerators took its maintenance agreement for an additional four years, it could further reduce its price for this service to $5 for the extra four years. Plaintiff, accordingly, made it obligatory on all purchasers of refrigerators to pay it this $5 for its agreement to keep certain parts of the refrigerators in repair for four years, in addition to the usual one-year warranty. So, from then on, what had before been optional now became obligatory, but the price of the agreement was reduced to $5. The price of this agreement was thus successfully reduced from $18 for a three-year agreement to $10 for a four-year agreement, and then to $5 for a four-year agreement.

We said that the agreement to pay $5 for this agreement to keep the refrigerators in repair for an extra four years was obligatory, but this was true only as to the purchasers of one refrigerator. It was not obligatory on multiple-unit purchasers; they could enter into this agreement or not, as they pleased. But, 93 per cent of the multiple-unit purchasers did take the agreement. They must have thought, therefore, that the amount charged was reasonable.

The record in the former case showed that it actually cost plaintiff $4,628,-797.83 to fulfill its obligation under these agreements; but the total amount collected from purchasers in consideration of this agreement was $10,687,115, which would indicate that the amount charged for the agreement was too high, but not high enough to indicate that some part of the amount charged was in reality a part of the sales price of the machine. If the difference between the amount charged for the agreement and the cost of performing it continued so great in subsequent years, an adjustment in the charge would be necessary to prevent the inference that some part of the charge was in fact a part of the sales price.

██ We are now of opinion that a manufacturer is entitled to make a reasonable charge for the maintenance of an article sold beyond the warranty period customary in the trade, and that such reasonable charge is no part of the sales price of the article sold.

This opinion is in line with rulings of the Internal Revenue Service in comparable cases.

In S.T. 943, 1952—1 C.B. 221, pencils subject to tax "were sold by the manufacturer as a unit," with spring loaded reels or notebooks not subject to tax. The Bureau ruled that the tax attached only to "that portion of the manufacturer's sales price of the unit which is properly allocable to the taxable article."

In Rev.Rul. 204, 1953—20 I.R.B. 25, a retailer of taxable silverware gave to the purchaser a non-taxable article as a sales incentive. It was ruled that the transaction constituted a sale of the silverware and a non-taxable article at a lump sum price, and that the tax should be measured only by the portion of the total amount received that was attributable to the silverware. Clearly the purchaser here had to pay the full amount to get the silverware and could not obtain the non-taxable article separately. But the tax was not imposed upon the full amount paid by the purchaser because, for that amount, the purchaser received something other than the taxable article.

In Rev.Rul. 224, 1953—21 I.R.B. 16, phonograph mechanisms, which are taxable under section 3404(b) of the Internal Revenue Code, were combined with player attachments, which were not taxable, and were sold as a unit for a single price. The tax was ruled to apply only to the portion of the price attributable to the mechanism, notwithstanding the mechanism and the attachment were intended to be used together and the particular mechanism could be obtained only through payment of an amount that included the price of the non-taxable attachment.

See also S.T. 572, XI–2 C.B. 469, 1932; and Rev.Rul. 54–100, 1954—11 I.R.B. 12.

■■ So much for the charge for the "protection plan." We are also of the opinion that a manufacturer is not entitled to an "allowance" for the cost of discharging its obligation under the customary manufacturer's warranty of the article sold. There is an implied warranty of any article sold by a manufacturer that it is in good working condition and free from defective parts. Many times these defects can be discovered only from use of the article, and, in the custom of the various trades, certain periods of time are allowed for these defects to show up. If they show up within the time allowed, the manufacturer must remedy them at his own expense, in order to make good his representation that the article sold was free from defects.

The sales price was for an article free of defects. The cost of remedying defects that later appeared, therefore, cannot be an "allowance" to the purchaser to be deducted from the sales price. It was not an "allowance", but a sum spent to give to the purchaser what the manufacturer had represented it was selling him, to wit, a sound article.

No extra charge was made for this one-year warranty.

We are, therefore, of opinion that plaintiff is not entitled to an allowance for the amount spent to remedy defects appearing within the usual one-year warranty.

In its first cause of action plaintiff sues for the taxes assessed and collected on the $5 charge for services it agreed to render under the additional four-year warranty, known as the "Protection Plan." These taxes were on sales made from January 1, 1945 to August 31, 1951. These sales were made subsequently to the sales involved in General Motors Corporation, etc. v. United States, 121 F.Supp. 932, 128 Ct.Cl. 465.

■ As we said above, we think plaintiff was entitled to make a reasonable charge for these services, and to the extent that it was reasonable, it cannot be considered as a part of the sales price of the refrigerator. Its reasonableness is to be determined by the relationship to the charge of the cost of rendering the service. However, the present record does not disclose the cost to plaintiff of rendering these services during the period now involved. The case must be referred to a Commissioner to take proof on this question only,

unless the parties are able to stipulate the amount.

Plaintiff's motion for summary judgment must, therefore, be denied.

It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

LITTLETON, Judge (concurring in part and dissenting in part).

Plaintiff sues to recover certain manufacturers' excise taxes for the period January 1, 1945 through August 31, 1951, (1) attributable to a $5 charge which plaintiff made in the sale of each refrigerator for a warranty known as the Five Year Protection Plan, and (2) attributable to amounts expended in fulfilling its obligations under a one-year warranty for which no separate charge in any amount was made.

The Five Year Protection Plan covered only the sealed unit of the refrigerator and its purchase was mandatory except to certain purchasers of multiple units. Plaintiff has two grounds on which it claims a right to recover excise taxes paid on this $5 item: (1) that it was a separate charge in the nature of insurance and excludable under Section 3441(a) of the Internal Revenue Code, 26 U.S.C.A. § 3441(a); (2) that in any event, sums expended by plaintiff in fulfilling the obligations of the warranty are allowances within the meaning of Section 3443(a) (2) of the Code and all excise taxes paid on such amounts should be refunded.

The one-year warranty covered the entire product including the sealed unit, and no separate charge was made for such warranty. Plaintiff's ground for seeking to recover excise taxes in connection with this one-year warranty is that amounts expended by plaintiff in fulfilling its obligations under this warranty are *allowances* within the meaning of Section 3443(a) (2) of the Code.

The majority of the court holds that the Five Year Protection Plan warranty falls within the exclusion granted by Section 3441(a) of the Code, and that the price paid for it is a *charge* to be excluded from the price and not subject to excise tax provided for in Section 3405 of the Code. However, instead of permitting plaintiff to recover all excise taxes paid on each $5 warranty sold in the period in suit, the majority remands the case to a commissioner of the court to determine the "reasonableness" of the $5 charge, indicating that recovery will be allowed only to the extent that such charge was reasonable. Assuming that the majority is correct, and I think it is, in holding that the $5 paid for the Five Year Protection Plan was in the nature of a *charge excludable* from the price of the refrigerator and therefore not subject to excise tax, I can see no justification in the law for permitting an exclusion in an amount *less than the charge made*. Either the charge in question is one for a service, in which event the law makes it entirely excludable, or it is a part of the sales price of the refrigerator and not excludable under Section 3441(a). The only reason I can think of for inquiring into the reasonableness of the charge is to determine whether or not it is in fact a separate charge for services at all, or is merely a device for increasing the sales price. As far as I can determine, the latter possibility has not been seriously entertained by anyone.

The identical issues relative to the taxability under the excise tax law of the Five Year Protection Plan has twice been decided by this court in suits involving the same parties as herein. General Motors Corp., etc. v. United States, 121 F.Supp. 932, 128 Ct.Cl. 465; General Motors Corp., etc. v. United States, No. 49428, Ct.Cl., 146 F.Supp. 220. The only difference in the three cases is the periods involved. In the two previous decisions the majority of the court held that the $5 charge made by plaintiff for the Five Year Protection Plan was not separate from the sales price of the refrigerator and was therefore taxable under Section 3405 of the Code, but that plaintiff was entitled

to a credit or refund under Section 3443 (a) (2) of the Code for amounts expended in fulfilling such five year warranty. The first decision, 121 F.Supp. 932, 128 Ct.Cl. 465, was before the Supreme Court on cross motions for certiorari and both motions were denied on February 14, 1955, 348 U.S. 942, 75 S.Ct. 363, 99 L.Ed. 737. In both decisions we *rejected* plaintiff's contention that the $5 separate charge was excludable under Section 3441(a), and the Government's contention that amounts spent in fulfilling its obligations under the warranty were not allowances within the meaning of Section 3443(a) (2) of the Code. Although I joined with Judge Whitaker in his dissent in the first General Motors case, I followed the majority opinion of General Motors in Westinghouse Electric Corporation v. United States, Ct.Cl., 140 F.Supp. 565.

I am of the opinion that this is a case in which the doctrine of collateral estoppel should be applied. The doctrine, an outgrowth of the doctrine of *res judicata*, and designed to prevent continued litigation of the same issues even though a different cause of action may be involved, is often applied in tax cases where the same legal issue has been decided for one tax year and a new cause of action involving the same issues is presented for subsequent tax years. City of New Orleans v. Citizens' Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202; Tait v. Western Md. Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405. In Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, the Supreme Court had occasion to review the law on collateral estoppel, especially in tax cases, and it held that a judgment in a prior suit operates as an estoppel respecting those matters litigated and determined and upon which the judgment was rendered. The doctrine was limited, however, to situations where there is no subsequent modification of the facts in the intervening years, and no modification of the controlling legal principles. The court pointed out that if there had been a

change in facts or in the controlling legal principles, an injustice would result as to the party against whom the estoppel operated. The doctrine of collateral estoppel was recently applied by the Tax Court in T. M. Stanback v. Commissioner, Nos. 51748–51751, decided October 8, 1956. See also Southern Maryland Agricultural Ass'n v. United States, Ct.Cl., 147 F.Supp. 276. The doctrine is applied even where the court in a subsequent suit believes its earlier decision to have been reached on an erroneous view of the law, as here. United States v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262.

In the instant case there has been no change in the facts relative to the Five Year Protection Plan nor has there been any contrary legal principle announced by this or any other court.

Accordingly I would hold, as plaintiff suggests we should in its latest brief, that the issue involving the application of the excise tax to the Five Year Protection Plan has twice been decided by this court, and, in the absence of any change in the facts or the law, we should decide the issue as we have in the two earlier decisions.

In connection with the one-year standard warranty, I do not think the doctrine of collateral estoppel applies because the facts or terms of that warranty are materially different from those of the Five Year Protection Plan. I concur with the majority that plaintiff is not entitled to an allowance under Section 3443(a) (2) of the Code for amounts spent to fulfill its obligations under that one-year warranty. I am of the opinion that this conclusion may be reached even if the court had felt itself bound by its previous decision on the Five Year Plan, because the one-year standard warranty has never been in issue before this court.

MADDEN, Judge (dissenting in part).

I have come to the conclusion, inexcusably belated, that the court was wrong in holding for the plaintiff in its earlier cases, 121 F.Supp. 932, 128 Ct.Cl. 465, and No. 49428, decided November 7,

1956. I think now, as I did when I wrote the opinion of the court in the first of these cases, that there is no material distinction between warranties for five year terms and warranties for one year or other shorter or longer terms; that there is no distinction between warranties separately charged for and warranties paid for in the purchase price of the utensil itself. I also think that the distinction suggested in the court's instant opinion between warranties in accordance with the "custom of the trade" and other warranties is largely nonexistent and, to whatever extent it does exist, is irrelevant. As to its nonexistence, the brief of the *amicus* in this case advises us that practically all manufacturers of refrigerating equipment warrant the sealed units for five years, which means that such warranties are the custom of the trade.

The plaintiff is, in this case, quite justifiably pressing our earlier decisions to their logical conclusion. If we adhere to those decisions, I think we must accompany the plaintiff to that conclusion. I would go back to the starting point and not forward to where that road inevitably leads.

The intention of Congress, in enacting Section 3443(a) (2) of the Internal Revenue Code of 1939, granting to payers of manufacturers' excise taxes the right to refunds of such taxes proportionate to the amounts of bona fide discounts, rebates or allowances to their customers, is the matter now in question. I now think that sums expended by such taxpayers in fulfilling, in kind, warranties of any sort, were not intended to be covered by this provision of the statute. There is a great variety of such warranties, extending from the warranty of fitness implied by law, without any expression whatever, to express warranties for various periods of months or years, even up to warranties for the entire life of the thing sold. Rights to refunds of taxes paid at the time of the sale would arise, in cases like the instant one, as much as five years, and, in case of warranties for longer periods, more than five years after the sale. Discounts, rebates or allowances in cash are never, I suppose, made at times so remote from the sale of the goods.

Then there is the problem of accounting, when warranties are fulfilled in kind. How much did the replacement part cost; what was the value of the defective part which was returned and which could often be rebuilt and resold; how much of the workman's time is attributable to the warranty, when on one trip he installs new appliances and also removes and replaces defective units of old appliances; how much of the overhead at the local sales agency or at the home office is properly attributable to the fulfillment of warranties, which is a small part of the entire business of these offices; is it proper tax accounting to charge the cost of fulfilling the warranty on the occasional defective appliance, which cost may be more than the whole cost of the appliance, against the selling price of other appliances as to which no defects developed and no costs were incurred?

These accounting problems are not insoluble, in the approximate fashion in which such accounting would have to be done, but they would impose upon the taxpayer a considerable burden of keeping proper accounts, and would impose upon the Government a heavy burden of checking such accounts. Cash rebates or allowances would be simple matters of bookkeeping and would not involve these difficult accounting problems.

Expenditures made in fulfilling warranties in kind could, of course, come within the statutory definition of "allowances" if Congress so intended. But equally, of course, the word allowances does not plainly or necessarily include them. The court's task is, then, to ascertain as best it can the "intent" of Congress in this regard. The probability is that the particular question did not occur to those who wrote the statute. It is significant that taxpayers, including the largest enterprises in the

country with the most astute tax lawyers in their service, did not, for many years, discover this meaning in the statute. Not until this plaintiff, in the first of its series of cases, presented this interpretation of the statute as a secondary and alternative basis of its claim, did such a possible meaning of the statute occur to the many other taxpayers to whom it would have meant large refunds of taxes. It is not, then, a meaning which those familiar with the language of business and of taxation naturally draw from a reading of the statute.