### PHILCO CORPORATION
v.
### UNITED STATES of America.
#### Civ. A. No. 28000.

United States District Court
E. D. Pennsylvania.
March 14, 1963.

William R. Spofford, Robert R. Batt, Philadelphia, Pa., for plaintiff, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Weaver & Glassie, Washington, D. C., of counsel.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Jr., John M. Hammerman, Dept. of Justice, Washington, D. C., for defendant.

JOSEPH S. LORD, III, District Judge.

This is a suit for refund of Federal Manufacturers Excise Tax (26 U.S.C.A. § 4061 et seq.) by plaintiff, a Pennsylvania corporation engaged in the manufacture and sale at wholesale of electronic equipment and appliances, such as radio and television sets, refrigerators and home freezers. Excise tax is paid by plaintiff, the manufacturer of these items, and is based upon the price charged plaintiff's vendees.

The claim for refund involves plaintiff's warranty program. The complaint is in three counts. Both parties have moved for summary judgment on Count I, and for that purpose have entered into a stipulation of facts. The claim under Count I is based on Section 6416(b) (1) of the Internal Revenue Code of 1954 and its predecessor, Section 3443(a) (2) of the 1939 Code, which provide that if the price on which the tax paid is based is thereafter adjusted, a proportionate part of the tax paid constitutes an overpayment refundable to the manufacturer. Plaintiff contends that its warranty fulfillment program involves a price adjustment within these sections.

Products sold by plaintiff are accompanied by a printed warranty certificate stating that plaintiff would repair or replace defective parts free of cost to the original retail purchaser. Plaintiff, however, made no retail sales and had no facilities of its own for servicing its products. Warranty fulfillment service was typically done by retail dealers who purchased Philco products from plaintiff's distributors. Plaintiff's practice in fulfilling its warranty obligations was to issue monetary credits to its distributors in respect to parts which became defective within plaintiff's warranty period, which defective parts were delivered by the distributors to plaintiff or its field inspectors. The credit allowed was measured by the current price charged by plaintiff for replacement parts of the same type as the defective part. The

receipt of the credit was not conditioned on the purchase of replacement parts by distributors, who would order such parts as necessary for their inventory. Plaintiff gave no credit or reimbursement to distributors or dealers for any labor costs involved in warranty fulfillment, and the general practice among dealers was to furnish such labor without cost.[1]

Preliminary to a consideration of this case on the merits is the Government's contention that Philco is here barred by collateral estoppel. With respect to this issue, it has been stipulated by the parties that the issues presented in Count I were raised by plaintiff in a former suit in the Court of Claims. That suit, No. 105–56, involved a refund claim for a prior period, March 1, 1950 through December 31, 1953, but it is stipulated that plaintiff fulfilled its warranty obligations in a manner which in all material respects was identical with that in which it fulfilled its obligation during the period here in issue, January 1, 1954 through December 31, 1956. The former case was dismissed by the Court of Claims upon motion of the Government for judgment on the pleadings after the filing of briefs by both sides, the filing of an affidavit by plaintiff, and oral argument. Certiorari was denied by the Supreme Court, 361 U. S. 825, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959), rehearing denied, 363 U.S. 857, 80 S.Ct. 1606, 4 L.Ed.2d 1739 (1960).

■ Both parties rely on the leading case on the application of collateral estoppel in the area of federal taxes, Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

" * * * Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. See The Evergreens v. Nunan, (C.C.A.2d) 141 F.2d 927 [152 A.L.R. 1187]. And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to made an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of stare decisis. Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment. * * * " Commissioner of Internal Revenue v. Sunnen, supra, 601–602, 68 S.Ct. 721.

■ Although the facts in the case before us and those in the former case may be identical, they involve distinct and separate transactions and collateral estoppel is inapplicable.

We proceed then to the merits, bearing in mind the advice of the Court in Sunnen that consistency and reliance on the rule of stare decisis may still be desirable.

We start with the observation that the reported case authority in this area of manufacturers' warranties of their consumer products is, at least since 1957,

---

1. Certain minor variations in the facts as stated respecting particular products or periods of time are set out in the stipulation, but are not relevant to our decision of this motion.

uniformly against the plaintiff. See General Motors Corp., Frigidaire Div. v. United States, 142 Ct.Cl. 878, 147 F.Supp. 739 (Ct.Cl.1957), 142 Ct.Cl. 842, 163 F. Supp. 854 (Ct.Cl.1958), cert. den. 358 U. S. 866, 79 S.Ct. 97, 3 L.Ed.2d 99 (1958); Ford Motor Company v. United States, 140 Ct.Cl. 487, 156 F.Supp. 554 (Ct.Cl. 1957), cert. den. 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97 (1958); Waste King Corp. v. United States, 60–1 U.S.T.C. ¶15,271 (S.D.Cal., 1959).

In each of these cases, the plaintiff taxpayer claimed that its expense of fulfilling its consumer warranties was an adjustment of the price it received for the article, on which price the tax had initially been computed. The Court of Claims had accepted the taxpayer's rationale in General Motors, Frigidaire Div., v. United States, 128 Ct.Cl. 465, 121 F.Supp. 932 (Ct.Cl.1954), cert. den. 348 U.S. 942, 75 S.Ct. 363, 99 L.Ed. 737 (1955), but reversed itself in the later Frigidaire case, 142 Ct.Cl. 878, 147 F. Supp. 739 (Ct.Cl.1957). The latter case reasoned:

" * * * The sales price was for an article free of defects. The cost of remedying defects that later appeared, therefore, cannot be an 'allowance' to the purchaser to be deducted from the sales price. It was not an 'allowance', but a sum spent to give the purchaser what the manufacturer had represented it was selling him, to wit, a sound article. * * *"

In the Ford case, supra, the manufacturer made no repairs itself, but reimbursed its dealers. The court nevertheless stated, 156 F.Supp. at page 555:

" * * * The distinction plaintiff seeks to draw, that in the General Motors case the sale was to the consumer whereas in the present case it was to the dealer, is without merit. In both cases the manufacturer gave to its purchaser, in one case, the consumer, and in the other, the dealer, a warranty that it was selling him a sound article; hence, sums spent to remedy any defect appearing in the warranty period were spent to make good the manufacturer's representation that the article sold was free of defects, and therefore the sums spent were not a readjustment of the sales price or a rebate or allowance.

"In the General Motors case, supra, the seller made the necessary repairs; in the present case, the purchaser did so, and then was reimbursed by the manufacturer. In each case the expenditure by the manufacturer was for correcting a defect. It was not a readjustment of the sales price.

"The sales price was for an article free of defects. The sums spent for correcting defects were to fulfill the seller's part of the bargain, to deliver a sound article.

"It makes no difference that the defect appeared after the dealer had resold the article. Under his contract of resale, he was obligated to his purchaser to make good any defects appearing in a certain period, and the manufacturer was in turn liable to the dealer to make them good. The dealer, who was the purchaser from the manufacturer, neither lost anything nor gained anything on account of remedying the defects. Therefore, there could not have been a rebate or allowance to him. * * *"

Plaintiff's contention here is that even if the above cases are correctly decided, the peculiar factual situation under which it operates is distinguishable. In all of the cited cases, the expenditures were found to be either direct repair expense or reimbursement for repairs performed by another, whereas Philco, although warranting its products to the ultimate consumer, claims to have no direct or indirect dealings with the consumer but only with its customer, the distributor. Under plaintiff's procedure, where a distributor returns a defective part, its account is credited with the cost of the part. Plaintiff does no repairs, reim-

burses for no labor costs, and claims that it does not control the warranty fulfillment procedure as between the distributors, dealers, and customers, but merely makes an adjustment with its customer.

Philco relies for its position on Rev. Rul. 55–763, 1955–2 Cum.Bull. 657, which we quote in full:

"A manufacturer of television picture tubes sells quantities of tubes to a manufacturer of television receiving sets both (1) free of the manufacturers excise tax for use as original equipment in television receiving sets and (2) subject to the tax for resale to distributors and dealers for use as replacement parts. If the original-equipment tubes become defective within the tube manufacturer's warranty period, they are replaced by distributors and dealers from their stocks of tax-paid tubes. The defective tubes are then returned to the tube manufacturer, who gives the television set manufacturer a rebate or credit under the warranty provisions. *Held,* such a rebate or credit allowed against the selling price of a tax-paid replacement tube constitutes an adjustment within the purview of section 3443 (a) (2) of the Internal Revenue Code of 1939 to the extent that the rebate or credit does not exceed the selling price of the replacement tube. Accordingly, a refund or credit of the manufacturers excise tax may be allowed to the tube manufacturer proportionate to the adjustment in the selling price of the tax-paid tube."

In Rev.Rul. 56–231, 1956–1 Cum.Bull. 686, the Treasury Department reaffirmed Rev.Rul. 55–763, indicated that it did not concur in the decision in the later overruled Frigidaire Case, 121 F.Supp. 932, and according to plaintiff, pointed up the factual distinction between the Frigidaire method of warranty fulfillment which it held did not constitute price adjustment, and the method of warranty fulfillment in Rev.Rul. 55–763 which it held did constitute such an adjustment. Philco, of course, urges that its program is identical to that of Rev.Rul. 55–763.

Rev.Rul. 56–231 reads in part:

" * * * In the Frigidaire case, the court held, in substance, that the expense of the manufacturer in fulfilling its warranty on a taxable item is in effect an 'allowance' given the ultimate purchaser, that is, a readjustment of the price paid for the refrigerator, for which 'allowance' a credit or refund of the tax paid with respect to the refrigerator is authorized by law. However, the manufacturer in fulfilling its warranty did not reduce the price collected from the buyers of its refrigerators.

"In the situation described in Revenue Ruling 55–763, the tube manufacturer actually gave the television set manufacturer a rebate or credit against the price of the tubes which the latter had purchased for resale as replacement tubes. This credit or rebate constituted an adjustment of the selling price within the purview of section 3443(a) (2) of the Internal Revenue Code of 1939 and entitled the tube manufacturer to a refund or credit of the tax paid on these replacement tubes. Although the price adjustment was given by the tube manufacturer because of warranty considerations, the reason for the price adjustment is immaterial for tax purposes. Such tax refund or credit would be allowable for any adjustment in the selling price of the tax-paid replacement tubes."

■ We do not consider that either of these two Revenue Rulings are determinative of this case in plaintiff's favor. The question is whether the credit given by Philco to its distributors is, as plaintiff claims, a price adjustment, or, as the Government claims, a reimbursement of warranty fulfillment expense.

We think it is the latter. Philco's warranty was directly to the consumer. Under it, Philco warranted to the consumer that it would replace defective parts. It matters not that the warranty also required that the parts be returned through the dealer or distributor, for the ultimate obligation remained that of Philco. Certainly, if the distributor and dealer through whom the consumer purchased went out of business, it could never be thought that Philco thereby escaped its express warranty obligations. We can easily see the inconvenience to Philco if those obligations were fulfilled directly to the consumer. But the method employed by plaintiff was a matter of convenience and nothing more. It was still the fulfillment of the warranty obligation of plaintiff, and of plaintiff alone.

Plaintiff argues that the transaction here involved was solely between itself and its vendee, the distributor, and that it had no concern with relationships beyond that. However, plaintiff cannot thus easily ignore either the realities or the legalities of its own consumer warranty. The fact remains that that warranty existed and that the distributor was merely plaintiff's agent, for plaintiff's convenience, in fulfilling it.

Realistically then, plaintiff's distributors have incurred an expense in fulfilling plaintiff's obligation. For this the distributor is entitled to be reimbursed. The fact that plaintiff chooses to use a bookkeeping procedure which credits the reimbursement to the account against which is charged the price of a television set does not make the credit an adjustment of the price of the television set any more than would any other credit to the same account. If, for example, a distributor had loaned money to Philco and instead of paying back the loan, the parties had agreed that the obligation would be credited against the price of articles purchased, obviously this would not be an adjustment of the price of those purchases. The transaction here is no different in kind.

We can agree that the reason for a price adjustment is immaterial. Rev. Rul. 56–231. But this assumes, of course, that the credit given *is* a price adjustment. It does not answer the initial question as to whether the credit here is or is not such an adjustment. We hold that it is not.

ORDER

AND NOW, March 14, 1963, IT IS ORDERED that the motion of the plaintiff for partial summary judgment on Count I of the complaint is denied, and the motion of the defendant for partial summary judgment on Count I of the complaint is granted.