PHILCO CORPORATION, Appellant,

v.

UNITED STATES of America.

No. 14733.

United States Court of Appeals
Third Circuit.

Argued April 15, 1964.

Decided Aug. 5, 1964.

Robert R. Batt, Philadelphia, Pa. (William R. Spofford, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for appellant.

Joseph Kovner, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Edward B. Greensfelder, Jr., Attys., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., on the brief), for the United States.

Before BIGGS, Chief Judge, and HASTIE, Circuit Judge, and KIRKPATRICK, District Judge.

HASTIE, Circuit Judge.

This appeal has been taken by a taxpayer, Philco Corporation, from a judgment, entered pursuant to Rule 54(b), Federal Rules of Civil Procedure, dismissing with prejudice the first count of a complaint seeking the partial refund of certain taxes paid for the taxable years 1954, 1955 and 1956 as required by the federal manufacturers' excise tax law.[1] The facts were stipulated in the trial court and the controversy was decided upon motions of the opposing parties for summary judgment.

Philco is a manufacturer of electronic equipment and household appliances. Its manufacturer's excise tax payments have been 10 per cent of the prices at which it has sold articles of its manufacture to wholesale distributors who, in turn, sell to retailers from whom consumers buy the articles. Philco now claims a refund based upon an alleged downward revision of its sale prices in cases where it has credited a distributor's purchase account with amounts representing the aggregate current prices of all parts which that distributor had returned to Philco as defective after the distributor had replaced them on com-

1. The 1954 tax obligation was imposed by sections 3404–3405 of the 1939 Internal Revenue Code. The corresponding sections 4141 and 4111 of the 1954 Code controlled the subsequent years. Throughout this opinion reference will be made to the 1954 Code only.

plaint of retail purchasers of Philco products.[2]

Such replacements were made pursuant to a manufacturer's certificate of warranty which accompanied each Philco product into the hands of the retail purchaser. This warranty promised the first retail purchaser that any defective part returned to Philco through one of its distributors during a stated warranty period would be replaced free of charge. However, Philco did not deal directly with consumers. Therefore, to implement this undertaking, Philco required its distributors to arrange for the maintenance of service facilities and to stock a supply of parts adequate for the performance of the manufacturer's warranty. A distributor would replace a defective part out of his stock, return the defective part to Philco and receive the credit on its appliance purchase account which is the basis of the present tax refund claim.

In the count now in controversy Philco bases its refund claim upon the following language of section 6416(b) (1):

"If the price of any article in respect of which a tax, based on such price, is imposed * * * is readjusted * * * by a bona fide discount, rebate or allowance, the part of the tax proportionate to the part of the price repaid or credited to the purchaser shall be deemed to be an overpayment."

Therefore, the question here is whether through the above described credit arrangement in connection with the replacement of defective parts the "price [of the original appliance which had contained the defective part] is readjusted * * by a bona fide discount, rebate or allowance." [3]

We approach this problem through similar but, in Philco's view, distinguishable cases where courts have refused to recognize manufacturers' expenditures in fulfilling warranties of their products as price readjustments. Our starting point is General Motors Corp., Frigidaire Div. v. United States, 1957, 147 F.Supp. 739, 142 Ct.Cl. 878. There the manufacturer at its own expense during a one-year warranty period—whether directly or through some agency does not appear in the opinion—replaced or repaired parts which had proved defective in the course of the retail purchaser's use of its products. The Court of Claims held that such an expense did not constitute a price readjustment and, therefore, provided no basis for a partial refund of the tax originally paid on the manufacturer's sale price of the appliance. The court characterized this expenditure as "a sum spent to give to the purchaser what the manufacturer had represented it was selling him, to wit, a sound article". 147 F. Supp. at 742. Thus, the court viewed this expense as the very antithesis of a price reduction.

The Court of Claims reached the same result in Ford Motor Co. v. United States, 1958, 156 F.Supp. 554, a case closer to ours on its facts. There the manufacturer sold to dealers who remedied any defects found by a customer within a 90 day warranty period and were, in turn, reimbursed by Ford. The court ruled that these payments to distributors were sums "spent to make good the manufacturer's representation that the article sold was free of defects, and therefore the sums spent were not a readjustment of the sales price or a rebate or allowance". 156 F.Supp. at 555. The same reasoning prevailed in Chrysler Corp. v. United States, E.D.Mich.1960, 190 F. Supp. 412, aff'd per curiam, 6th Cir. 1962, 300 F.2d 154.

We agree with these decisions. Whether the manufacturer itself replaced defective parts of its appliances or paid someone else to do so, it was not com-

---

2. The amount of the refund claimed in this suit is the impressive total of $984,-369.77.

3. The separate question whether the price of a tax paid part used to replace a defective part may be readjusted when the replacement is made at the manufacturer's expense pursuant to his warranty, is a different matter which may arise under counts not now before us.

pensating for the poor quality of the article originally sold by reducing its price. Rather, it was incurring additional collateral expense to bring that article up to the quality which the persisting original price presupposed.

This case is different in one regard only. Instead of reimbursing a distributor, who had replaced defective parts, in money or new parts, Philco entered the value of the replacement parts as a credit against amounts receivable from that distributor for appliances bought from Philco. It is because the distributor was reimbursed by this procedure of setoff against balances unpaid for appliances that Philco argues that the original prices of appliances were "readjusted" within the meaning of section 6416(b) (1).

But if the use of this bookkeeping procedure is in itself sufficient to make a credit a price readjustment, then any obligation of a manufacturer to his vendee would become a price readjustment on articles sold if it should be satisfied by a setoff against a balance owed for such articles. A manufacturer might require a new distributor to deposit a sum with it as a token of solvency and good faith, to be returned after a year. If instead of returning cash, the manufacturer should credit the distributor's purchase account, this would be, under Philco's present theory, a price adjustment, justifying a claim for excise tax refund. Or, the manufacturer might negligently injure the distributor's property in delivering merchandise. If this tort claim should be settled by a credit against the price of the merchandise sold, the same argument would apply.

These examples point up the fact that we must look to more than the mechanics of bookkeeping in deciding whether a price readjustment has been made. As the court below aptly said in its opinion: "The fact that plaintiff chooses to use a bookkeeping procedure which credits the reimbursement to the account against which is charged the price of a television set does not make the credit an adjustment of the price of the television set any more than would any other credit to the same account." For, fundamentally, a price reduction is a change in the sum agreed upon as the acceptable consideration for an article of commerce. Here, there was no change in the agreed monetary equivalent of the appliances sold. Rather, there was a separate consideration due the distributor for the separate service of performing the manufacturer's warranty. The parties merely set off the balance due the distributor on one agreed exchange against the balance due the manufacturer on another.[4]

We have not overlooked Philco's additional argument that Revenue Ruling 55–763, 1955–2 Cum.Bull. 657, supports its claim. However, that ruling concerns a tax refund allowable to a manufacturer of television picture tubes on tax paid tubes which it sold to a distributor and which the distributor subsequently used in replacing free of charge defective tubes of the same manufacture, thereby earning a credit against the original price of the replacement tube. Certainly it is arguable that this credit was in fact a

4. This conception of the commercial reality of the relevant transactions is well and clearly set out in the following excerpt from a law review note concerning this problem:

"* * * under a warranty contract the manufacturer does not reduce the price of his product to equal the decreased value of the chattel. On the contrary, he expends sums of money to raise the value of the chattel so that it equals the sales price originally agreed upon.

"It is immaterial whether the manufacturer himself repairs his product, or whether he credits his distributors, or pays them cash for repairs which the latter perform. It is the purpose for which the expenditures were made that governs. Since they were made to restore the value of the chattel so that it is now worth the sum originally paid for it, and not to compensate the buyer for the reduced value of the chattel, the transaction does not constitute a readjustment of the selling price." Note Excise Tax Consequences of Warranty Contracts, 1959, 34 N.Y.U.L.Rev. 953, 958–59.

reduction of the price of the tax paid tube in recognition that it had not been resold as contemplated in normal course of trade but rather was used for the manufacturer's benefit as a free replacement for other defective merchandise. This is quite different from arguing that the manufacturer has reduced the price of the television set in which the replacement tube has been incorporated. Yet that is what Philco must argue here. Indeed, the present argument, that the price of the original appliance has been reduced, is inconsistent with the concept of Revenue Ruling 55–763 that what the manufacturer actually does in such cases is to reduce the price of the replacement part.

The judgment will be affirmed.