**GENERAL MOTORS CORPORATION, FRIGIDAIRE DIVISION**

v.

**UNITED STATES.**

No. 236–56.

United States Court of Claims.

May 4, 1960.

Whitaker, J., and Jones, C. J., dissented.

Newell W. Ellison, Washington, D. C., Henry M. Hogan, Calvert Thomas, J. C. Siegesmund, Jr., Detroit, Mich., Daniel M. Gribbon and John B. Jones, Jr., Washington, D. C., on the briefs, for plaintiff.

Harold S. Larsen, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland and Philip R. Miller, Washington, D. C., on the brief, for defendant.

MADDEN, Judge.

Plaintiff sues for refund of excise taxes exacted on the price for which it sold refrigerators to its distributors. It says it is entitled to deduct, as an allowance, the amount it refunded to the distributors, for transmittal to the retailers, on account of the cost of advertising the product in the localities of the various retailers. It relies on the provisions of section 3443 of the Internal Revenue Code of 1939, which reads:

"§ 3443. *Credits and refunds*

"(a) A credit against tax under this chapter, or a refund, may be allowed or made—

\* \* \* \* \* \*

"(2) to any person who has paid tax under this chapter with respect to an article, when the price on which the tax was based is readjusted by reason of return or repossession of the article or a covering or container, or by a bona fide discount, rebate, or allowance; in the amount of that part of the tax proportionate to the part of the price which is refunded or credited."

26 U.S.C. § 3443, 53 Stat. 417 (1939).

■■ Under this statute, if a manufacturer sells an item at a stated price, but allows the purchaser a discount, before payment, or a refund or credit of a part of the price, after payment, the amount of the discount or refund or credit is deducted from the originally stated price, and a proportionate refund of the tax is given to the manufacturer. The plaintiff's situation seems to fit the text of the statute. The Government, nevertheless, urges that for many reasons the statute does not apply.

The plaintiff collected from its vendees a stated price for its refrigerators and other products subject to the manufacturer's excise tax, as well as for its products not subject to the tax. It had a "cooperative advertising plan" under which most but not all of its products, including all of its products which were subject to the excise tax, were covered. The plan was that the plaintiff agreed, if a retailer of its products would spend money in advertising locally the plaintiff's products and their availability at the retailer's store, and if his advertising complied with certain standards set by the plaintiff, the plaintiff would pay to the dealer one-half of the cost of the advertising, but not to exceed $1\frac{1}{4}$ percent of the plaintiff's "suggested cash installed price." During the period covered by the instant suit, advertisements using the following media were permissible under the plan: newspapers, radio, television, movie trailers, telephone directories, display materials, exhibits and shows, car cards, tabloids, advertising novelties, circulars, direct mail, and signs.

The plan does not obligate a dealer to do any advertising, nor, if he does advertise, to comply with the standards set by the plan. If he does not advertise, or if his advertisements do not comply with the standards, he does not get any payment from the plaintiff. If he is entitled to a payment, he is obliged to submit proof of his claim within the current calendar year or within five months after the end of the year.

The effect of the plan was that if a dealer had, for example, bought refrigerators from the plaintiff, or one of its distributors, and paid $5,000 for them and had spent money in local advertising of the refrigerators, the plaintiff would pay him $1\frac{1}{4}$ percent of the suggested installed price of the refrigerators, which we will assume to have been $7,500, if he had spent twice or more the amount of the $1\frac{1}{4}$ percent. In the example just given the retailer would get back $93.75. The net payment of the dealer to the plaintiff would be, then, not $5,000, but $93.75 less than $5,000. The plaintiff says that, under section 3443, it should get back the excise tax which it paid on the $93.75.

We think the plaintiff is right. Its sale of the refrigerators was for $5,000 and it paid the sales tax on that sum, but the price was later "readjusted" by way of a rebate to the purchaser. Section 3443 does not say that it is applicable only to some kinds of rebates, or only to rebates given for some kinds of reasons or purposes. It is, of course, conceivable that there might be situations in which a repayment or credit is given by the manufacturer to the purchaser, but to which section 3443 should not apply because its application would violate the statutory purpose, or would create such difficulties in the administration of the tax laws as to compel a departure from the letter of the statute.

Discounts and rebates are given for various reasons but always, we suppose, because the giving of them will be of benefit to the giver. They are, we suppose, always welcomed by the receiver. A discount for prompt payment benefits the giver because it assures him against the loss of the debt, and gives him available working capital. A discount, or a rebate at the end of the year, because of the quantity purchased by the vendee, is good for the seller because it induces the vendee to purchase and dispose of more of the seller's goods. A promised discount on floor stocks in the hands of

the vendee at the time of a model change is good for the seller because it reassures the vendee and causes him to maintain adequate stocks even though a model change is anticipated.

The Government urges that the plaintiff is buying advertising for its goods when it induces and partly pays for the retailer's advertising. This is, of course, true, but we think it does not distinguish the instant case from other discount and rebate situations which are admittedly covered by section 3443. In the situations referred to above, the vendor is buying the early use of money and insurance against defaults in payment, or is buying additional effort and expense on the part of the retailer to dispose of a large quantity of goods, or is buying assurance that the retailer will maintain an adequate stock of goods so that opportunities for sales will not be missed.

One type of excise tax case involving advertising expense has been litigated. In F. W. Fitch Co. v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472, the question was whether, under the then-applicable version of section 3441 of the Internal Revenue Code of 1939, 26 U.S.C. § 3441, the manufacturer's cost of national advertising should be dissected out of and excluded from the sale price on which the excise tax was computed. The statute provided for the exclusion of "A transportation, delivery, insurance, installation, or other charge * * *." Fitch claimed that its expenditures for national advertising were "other charges", and hence excluded by section 3441. The Supreme Court rejected the argument. This court, in Ayer Co. v. United States, 38 F.Supp. 284, 93 Ct.Cl. 386, had previously reached the same conclusion.

The Fitch case is not in point in the instant litigation. Transportation, delivery, insurance and installation charges are expenses incurred after the manufacture of the goods. They are readily susceptible of separate billing. The words "other charge" in section 3441 meant, the Supreme Court held, other charges of a similar nature, considered in the context of the statute.

In the instant case, the taxpayer's reliance is on section 3443, and the only requirement of the statute is that some of the money which the purchaser had paid for the property should be later refunded to the purchaser. The fact that the occasion for the refund had to do with advertising does not relate the instant problem to the one decided in Fitch, and Ayer.

In the 1956 Report prepared by the staffs of the Joint Committee on Internal Revenue Taxation, and the Department of the Treasury, and submitted to a subcommittee of the Ways and Means Committee of the House of Representatives, the representatives of the Treasury Department joined in the following statement:

"Based on the foregoing, the present position of the Service with respect to cooperative advertising substantially is as follows:

"(1) The distinction between national and local advertising is abolished.

"(2) Where a manufacturer's selling price to his customer contains an unsegregated advertising charge, it is a part of his tax base.

"(3) In the case where a manufacturer makes a separate charge to his distributor for advertising and the proceeds are kept in a separate account earmarked for advertising, the separate advertising charge is not a part of the tax base. This exclusion of the advertising charge from the tax base can be supported by establishing that the charge is either listed separately on the sales invoice or billed separately; the contributions from distributors are set aside as a fund to be used for advertising for the benefit of these contributors; and the funds are so used or the unexpended portion is held in trust or refunded to the contributor upon his withdrawal from the program.

"(4) Even in the case of a separate fund (as outlined in (3) above),

where the manufacturer makes a contribution to the advertising account, then in accord with [F. W.] Fitch [Co.] v. U. S., supra, the amount of the manufacturer's contribution may not be deducted in computing the taxable sale price. *However, subsequent allowances from such contributions to distributors for expenditures by them or their dealers in advertising are to be treated as readjustments of sale price under Section 6416(b) (1)* [1] *of the Code* [26 U.S.C. § 6416(b) (1)]. [Italics added.]

"The recognition of the allowances in the situation last described as readjustments of sale price is distinguishable from the issue involving the treatment of expenses incurred in fulfilling warranties on the ground that they constitute direct allowances by the manufacturer to his customer as a part of the sales program in which the manufacturer is involved. These adjustments are, as indicated before, made to the manufacturer's vendee and are not dependent upon conditions which may subsequently occur with respect to the article in the hands of the ultimate consumer many steps removed from the transaction upon which the imposition of tax occurred.[2]"

The Treasury's authorized spokesman read to the subcommittee a prepared statement which contained the following paragraph:

"(3) Where the manufacturer makes a contribution to the advertising account in the case of a separate fund, the amount of the manufacturer's contribution may not be deducted in computing the taxable sale price. Subsequent allowances from such contributions to distributors for expenditures by them or their dealers in advertising should be treated as readjustments of sale price under section 6416(b) (1) of the Code."

The spokesman interrupted his reading to advise the subcommittee that "The Internal Revenue Service will rule in the manner indicated" and that "the problem can best be handled by ruling and does not require legislation." [3]

The foregoing quoted statements represented the interpretation which the Internal Revenue Service placed upon the statute in January 1956. On December 19, 1956, the Commissioner of Internal Revenue wrote to the chairman of the subcommittee explaining why the Revenue ruling promised in January had not been issued. He said that because of intervening events, principally the filing by taxpayers of several suits involving large sums,

"* * * We do not feel that we are in a position to go forward with the publication of the ruling we previously discussed nor, until further facts are developed, to suggest a satisfactory solution to the problem at this time.[4]"

On December 16, 1958, T.D. 6340, 23 Fed.Reg. 9692–3, promulgated Treasury Regulations sections 330.1–1 to 330.1–3 bearing on the question of advertising expenses and rebates and allowances. Section 330.1–3 expressly provides that these regulations are not retroactive, hence we do not consider or discuss them.

We think that the interpretation which the Treasury Department gave to section 3443 in January 1956 was right. We find no justification for departing from the language of the statute.

1. This section of Internal Revenue Code of 1954 is substantially identical with section 3443 of the 1939 Code.

2. Hearings on Excise Tax Technical and Administrative Problems before a subcommittee of the House Committee on Ways and Means, 84th Cong., 2d sess., Part 2, pp. 13–15 (January 10, 1956).

3. Id. pp. 57–59.

4. Hearings on Excise Tax Technical and Administrative Problems before a subcommittee of the House Committee on Ways and Means, supra, Part 3, pp. 922–923.

The plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.

It is so ordered.

LITTLETON, Judge (Ret.), and LARAMORE, Judge, concur.

WHITAKER, Judge (dissenting).

I am unable to agree with the majority. The retailer paid the purchase price not for a refrigerator alone, but for one that had already been advertised nationally and which the seller agreed to assist in advertising locally. Hence, when the seller remitted to the advertising medium or to the retailer his agreed contribution to the cost of local advertising, he was doing nothing more than fulfilling the obligation for which the purchase price was paid. He was paying for something he had agreed to deliver as part consideration for the purchase price.

A refrigerator on his floor was worth but little to the dealer unless his customers knew he had it. What he paid for was the refrigerator itself and the manufacturer's assistance in letting people know he had it in stock. A refrigerator unadvertised locally was worth something to the dealer, but advertised locally it was worth considerably more. This added value, gained through local advertising, paid for in part by the manufacturer, was what the dealer purchased. The advertising of the article was an integral part of what the dealer bought, quite as much so as the frame, the doors, and the freezing unit. The advertising gave to the article the element of desirability, just as did the paint and the chrome on it. The advertising, both national and local, cooperated with the paint and the chrome to make people want it. Since it was bought for resale, this was its most valuable element to the dealer.

The obligation of the manufacturer to assist in advertising it locally was a part of the consideration for which the sales price was paid and, hence, the discharge of this obligation by payment of the agreed amount could not be an "allowance" to the dealer. An "allowance", as used in the Act, must work a "readjustment" or reduction in the sales price. There has been no reduction in the sales price. The manufacturer still has the amount paid it when the sale was made and has delivered no more than it agreed to deliver, to wit, a refrigerator and a part of the cost of putting the refrigerator on display locally. A refrigerator on display was what the dealer wanted, not one hidden in its basement. This is what it paid for and this is what the manufacturer gave him.

Section 3441(a) provided that in determining the sales price there should be excluded "a transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included)." Manufacturers insisted that the cost of national advertising was a "charge" to be excluded from the manufacturer's sales price, but this court held to the contrary in Ayer Co. v. United States, 38 F.Supp. 284, 93 Ct.Cl. 386. The Court of Appeals of the 8th Circuit was of like opinion, United States v. F. W. Fitch Co., 141 F.2d 380, but the 7th Circuit had held otherwise in Campana Corp. v. Harrison, 114 F.2d 400. The Supreme Court settled the controversy in F. W. Fitch Co. v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472. It held in that case that what the manufacturer sold was a nationally advertised product and that the advertising was an integral part of the product sold and could not be separated from it, whether or not charged for separately, and, hence, that there was no basis for excluding the cost of it from the sales price. I see no distinction between a manufacturer's national advertising and its advertising done through the instrumentality of its dealers scattered throughout the country from the Atlantic to the Pacific, and from the Great Lakes to the Gulf. When this advertising through dealers is taken as a whole, as it must be, it is indeed national advertising by the manufacturer of its product. The manufacturer knows

this local advertising will enhance the value of its product, as well as benefit the dealer and, hence, it is willing to share the cost. Indeed, plaintiff calls it its "cooperative advertising plan." This is to say that the retailer and the manufacturer "go in together" to do something for their mutual benefit, to advertise that the manufacturer's product is obtainable at the store of the dealer, and that it is a superior product. This helps the retailer sell the product, and the manufacturer to sell other products.

I reiterate: What the manufacturer sells is not an unknown product, but one nationally advertised and one which he obligates himself to assist in advertising locally up to a stated amount. In each case, the manufacturer incurs an additional cost to enhance the value of the product. In each case, the purchaser must pay this additional cost in order to obtain the product. An advertised product is what is sold, whether advertised nationally or locally. Hence, the cost of neither is to be excluded from the sales price.

Before the manufacturer ever sells the refrigerator it sets up on its books an account to take care of the cost of local advertising. The amount charged to the account is 1¼ percent of the "suggested cash installed price." This, of course, is taken into account by the manufacturer in fixing his sales price. When it pays this cost, it is discharging an obligation it assumed when it demanded the sales price. The sales price is no more to be readjusted on that account than for the cost of advertising in a national magazine or the cost of the frame, or the doors, or the freezing unit. They are all an integral part of the thing sold.

This is contrary to the view of the District Court for the Southern District of Indiana in Servel, Inc. v. Smith, 54 F.Supp. 436. Local advertising was involved in this case, but the opinion did not distinguish between local and national advertising. Judge Evans, acting as District Judge, expressly refused to follow our decision in Ayer Co. v. United States, supra, where national advertising was involved, but did follow Campana Corp. v. Harrison, 7 Cir., 114 F.2d 400, and the District Court's opinion, 52 F. Supp. 292, in F. W. Fitch Co. v. United States, supra, which also involved national advertising. However, the Court of Appeals, 8 Cir., 141 F.2d 380, reversed the District Court in F. W. Fitch Co. v. United States, and the Supreme Court affirmed the Court of Appeals. Servel, Inc. v. Smith and Campana Corp. v. Harrison have, therefore, been overruled.

What I have said is in harmony with the principle underlying the decision in Ford Motor Co. v. United States, 156 F. Supp. 554, 140 Ct.Cl. 487. In that case the manufacturer sold its product with an expressed 90-day warranty. No one could purchase the product without this warranty. The manufacturer attempted to claim a tax refund by reason of its reimbursement of its dealers for the expense they incurred in fulfilling the manufacturer's warranty agreement. This court held that these payments were not a reduction in the sales price, but rather were the fulfillment of the manufacturer's part of the bargain, to wit, a machine in which no defects would appear in 90 days. When this promise was fulfilled, the purchaser merely received what it had paid for in the first instance. When a manufacturer pays an expense which it has promised to pay at the time of the original sale, it can never be a reduction in the sales price. Its payment is, in fact, a part of the consideration for the sales price. Cf. General Motors Corp. v. United States, 163 F.Supp. 854, 142 Ct.Cl. 842.

I am authorized to say that JONES, Chief Judge, joins in this dissenting opinion.