**WATERMAN–BIC PEN CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

Oct. 22, 1963.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff. Leon Alexandroff, Neil A. Pollio, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, for the United States, Robert Arum, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

Both the plaintiff and defendant move for summary judgment in this action for refund of federal excise taxes brought by the plaintiff-taxpayer Waterman-Bic Pen Corporation. The parties have entered into a stipulation of all the relevant facts pertaining to the taxpayer's claim and there remain no genuine issues as to any material facts.

The taxpayer, a manufacturer of pens and other writing instruments, during the period from November 20, 1958 through March 31, 1960 paid the manufacturer's excise tax on various of its products subject to the tax. Of the amount so paid, the taxpayer seeks a refund of $13,827.89.

The claim for refund arises from a "cooperative advertising plan" engaged in by the taxpayer with its distributors, dealers and other customers during this

period. Pursuant to the plan, the taxpayer agreed to reimburse its dealers, subject to a certain maximum, for expenditures incurred by the dealer in advertising the taxpayer's products. The plan was optional. If the dealer chose to participate he would receive reimbursement for his advertising costs if he complied with certain terms, conditions and requirements specified by the taxpayer, which included the following:

(1) The prices at which the taxpayer's products were advertised were required to be a "full list" price;

(2) The space or time charged were required to be used solely for the taxpayer's products, although a proportionate reimbursement was allowed when the taxpayer's product was advertised with other products;

(3) The advertising costs were required to be reasonable;

(4) Proof of performance was required to be submitted to the taxpayer before reimbursement would be made.

Upon receipt by the taxpayer of evidence that its products were advertised in accordance with the plan, the taxpayer would reimburse its dealer by crediting the dealer's account in the specified sum up to a maximum of 10% of the net amount of the order.

During the period in suit the taxpayer expended in excess of $137,000 in reimbursing dealers under the cooperative advertising plan and an additional $63,000 on its own advertising program.

The taxpayer contends that the amounts it credited to its customer's accounts to reimburse the expenditures incurred in advertising the taxpayer's products constitute price readjustments which entitle the taxpayer to a refund under Section 6416(b) (1) of the Internal Revenue Code of 1954.

## DISCUSSION

### A. THE 1954 CODE AND REGULATIONS.

The relevant code sections governing the taxpayer's claim for refund are Sections 4216(a) and 6416(b) (1) of the Internal Revenue Code of 1954.

Section 4216(a) provides:

"Definition of price

"(a) Containers, packing and transportation charges.—In determining, for the purposes of this chapter, the price at which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this statute, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary or his delegate in accordance with the regulations."

Section 6416(b) (1) reads:

"Certain taxes on sales and services

\* \* \*

"(b) Special cases in which tax payments considered overpayments. —Under regulations prescribed by the Secretary or his delegate credit or refund, without interest, shall be made of the overpayments determined under the following paragraphs:

"(1) Price readjustments.—If the price of any article in respect of which a tax, based on such price, is imposed by chapter 31 or 32, is readjusted by reason of the return or repossession of the article or a covering or container, or by a bona fide discount, rebate or allowance, the part of the tax proportionate to the part of the price repaid or credited to the purchaser shall be deemed to be an overpayment."

Section 6416 was amended in 1960 and now provides in pertinent part: "If the price of any article \* \* \* is read-

**38**

justed by reason of * * * a bona fide discount, rebate, or allowance, including * * * a readjustment for local advertising * * *, the part of the tax proportionate to the part of the price repaid or credited to the purchaser shall be deemed to be an overpayment." Section 2 of Public Law 86–781, 74 Stat. 1018. The plaintiff concedes the amended statute does not apply to its claim.

Treasury Regulations 330.1–1 to 330.-1–3 [1] provided in pertinent part:

"§ 330.1–1 Determination of Price for Purposes of Manufacturers Excise Taxes. * * *

" * * * *

"(b) Any charge which is required by a manufacturer, producer, or importer to be paid as a condition to his sale of a taxable article and which is not attributable to an expense falling within one of the exclusions provided in section 3441 (a) of the Internal Revenue Code of 1939 is includible in the sale price upon which the tax is based. It is immaterial for this purpose that the charge may be paid to someone other than the manufacturer, producer, or importer, or that it may be separately billed to the purchaser as one earmarked for expenses incurred or to be incurred in his behalf, as for example, for advertising at the national or local level, for demonstration or display of the article, for sales promotion programs, or otherwise.

"§ 330.1–2 Readjustment of Price for Purposes of Manufacturers Excise Taxes.—(a) Readjustments of the price of an article, as determined for purposes of the manufacturers excise taxes imposed by chapter 29 of the Internal Revenue Code of 1939, may not be anticipated. However, under section 3443(a) (2) of such Code, if the tax is based upon the price for which an article is sold, a proportionate adjustment of the tax may be made when the price is subsequently readjusted by a bona fide discount, rebate, or allowance made to the purchaser of the article. Section 3443(a) (2) provides as follows:

" * * *

"(b) In determining whether a manufacturer, producer or importer has made a bona fide discount, rebate, or allowance to a purchaser, for purposes of section 3443(a) (2), the basic consideration is whether the price actually paid by, or charged against, the purchaser has in fact been reduced by subsequent transactions between the parties. In general, the price will be considered as having been readjusted by reason of a bona fide discount, rebate, or allowance only if the manufacturer, producer, or importer repays a part of the purchase price in cash to his vendee, or credits the vendee's account, in consideration of factors which, if taken into account at the time of the original transaction, would have resulted at that time in a lower sale price. For example, a price readjustment is considered to have been made when a bona fide discount, rebate, or allowance is given in consideration of such factors as prompt payment, quantity buying over a specified period, the vendee's inventory of an article when new models are introduced, or a general price reduction affecting article held in stock by the vendee. On the other hand, repayments made by a manufacturer, producer, or importer to his vendee to not effectuate price readjustments if given in consideration of an expenditure made or to be made by the vendee for national or local advertising, for demonstration or display of the manufacturer's product by the vendee, or other similar circumstances under

1. Treas.Regs. 330.1–1 to 330.1–3 were issued under Section 3791 of the Internal Revenue Code of 1939 and were made applicable to the Internal Revenue Code of 1954 under Section 7805 of the 1954 Code.

which the vendee has been or is required to incur an expense which, if treated as a separate item in the original transaction and not included in the price billed for the taxable article, would nevertheless have been includible in the price of the article for purposes of computing the tax.

"§ 330.1–3 Application of Regulations.—(a) In general. Except as provided in paragraph (b) of this section, the regulations in this part shall be applicable in respect of sales made on and after March 1, 1939."

If valid, Treas.Regs. 330.1–1 to 330.1–3 govern this case.

The regulations promulgated under Sections 4216 and 6416 prior to the adoption of Treas.Regs. 330.1–1 to 330.-1–3 in 1958 provided in part:

"§ 316.8 Basis of tax on sales, generally

"* * * (b) In general, this should be the manufacturer's actual price at the point of distribution or sale. * * *"

"§ 316.13 Discounts and adjustments, generally

"(a) Readjustments in sale price (such as allowable discounts, rebates, bonuses, etc.) cannot be anticipated. * * *"

Section 316.13(b) and (c) provided that quantity rebates and obsolete inventory rebates were bona fide readjustments in the sales price.

**B. THE ISSUE**

The issue is whether reimbursements pursuant to a cooperative advertising plan between the taxpayer and its dealers are bona fide readjustments of the taxpayer's sales price within the terms of Sections 4216 and 6416(b) (1) of the Internal Revenue Code of 1954 as they existed prior to the 1960 amendment of Section 6416.

In order to resolve this issue, an analysis of the applicable sections of the Internal Revenue Code and the case law is required.

**C. LEGISLATIVE HISTORY OF SECTIONS 4216 AND 6416(b) (1) OF THE 1954 CODE.**

Sections 4216 and 6416(b) (1) trace their lineage directly to provisions of the 1932 Act. Sections 4216 and 6416(b) (1) are virtual reenactments of Sections 3441 and 3443(a) (2), respectively, of the 1939 Code, which in turn are substantially identical to Sections 619 and 621(a) (2) of the 1932 Act.

In the 1932 Act, Congress in Section 619 defined the price for which goods were sold as including charges for coverings and containers and charges incident to placing the article in condition packed ready for shipment. However, transportation, delivery, insurance, installation and other similar charges were excluded from the price. In 621(a) of the 1932 Act, Congress provided for a refund of excise taxes "when the price on which the tax was based is readjusted by reason of a return of the goods or by a bona fide discount, rebate or allowance."

Sections 619 and 621(a) were contained in Sections 604 and 605(a) of the Revenue Bill of 1932 as reported by the House Ways and Means Committee. The Committee Report accompanying the bill provided in pertinent part (H.R. Rep. No. 708, 72nd Cong., 1st Sess. 34, 38–39; 1939–1 CB (Part 2) 457, 480, 484–85):

"It is of utmost importance that the tax on manufacturers be imposed and administered uniformly and without discrimination. Each member of a competitive group must pay upon substantially *the same basis* as all his competitors, even though his sales methods may differ. (Emphasis supplied)

* * *

"Under subsection (a), refund or credit may be allowed in cases where the sales price has been readjusted after the sale. This provision covers readjustments such as cash or quantity discounts, credit for return of goods or containers, and any oth-

er bona fide rebate or allowance amounting to a *change in the sales price.*" (Emphasis supplied)

Sections 619 and 621(a) were not intended to be read separately. They are complementary sections; that is, if a charge for a particular item would not be excludable from the sales price, a payment by the manufacturer to his customer to reimburse the customer for expenditures in connection with such item could not be considered a price readjustment. The Conference Committee Report accompanying the 1932 Act stated: "This amendment provides (1) a method of determining sale price by including charges for containers and the like and excluding * * * transportation, delivery, and similar charges." (Conf.Rep.No. 1492, 72nd Cong., 1st Sess. 22; 1939–1 CB (Part 2) 539, 548)

## D. F. W. FITCH CO. v. UNITED STATES.

In 1945, the Supreme Court in F. W. Fitch Co. v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472, (in interpreting Section 619(a) of the Revenue Act of 1932), held that advertising and selling expenses incurred by a manufacturer clearly fell within the class of changes which Congress intended to be included in the excise tax base.

In the Fitch case the taxpayer attempted to exclude from the selling price advertising costs on the theory that the cost of advertising was an "other charge" as provided by the last sentence of Section 619(a). The court rejected this contention as contrary to both the letter and spirit of Section 619(a). The court further held that the inclusion of advertising and selling expenses in the tax base was "plainly warranted by the language of § 619(a)" and that "no rule of reason or grammar justifies placing advertising and selling expenses within the meaning of this exclusionary sentence." 323 U.S. at 585, 65 S.Ct. at 411, 89 L. Ed. 472. The court further noted: "Regardless of whether we consider such expenses technically as manufacturing costs, it is obvious * * * they enter into the composition of the wholesale selling price." 323 U.S. at 584, 585, 65 S.Ct. at 411, 89 L.Ed. 472.

## E. GENERAL MOTORS CORP. v. UNITED STATES.

The taxpayer in support of its claim relies basically upon the decision of the Court of Claims in General Motors Corp., Frigidaire Division v. United States, 277 F.2d 929 (Ct.Cl.1960). The facts in that case are similar to the facts here. In General Motors, the taxpayer filed a claim for refund for alleged overpayments of the excise tax based on reimbursements to its dealers under a cooperative advertising plan similar to that employed by the taxpayer here.

The statute involved in the General Motors Case, Section 3443 of the Internal Revenue Code of 1939, is identical to Section 6416(b) (1) of the Internal Revenue Code of 1954.

The majority opinion in General Motors, supra, held that moneys paid by plaintiff to dealers on account of advertising, pursuant to the cooperative advertising plan, were adjustments of plaintiff's price by way of a rebate to the dealer and entitled plaintiff to a refund of the excise tax on the amounts paid. The court reasoned that the controlling Code section was Section 3443. Therefore, when the plaintiff refunded part of the price to its dealers the price was "readjusted" within the meaning of Section 3443. In the words of the court, "Section 3443 does not say that it is applicable only to some kinds of rebates, or only to rebates given for some kinds of reasons or purposes." The court further stated: "In the instant case, the taxpayer's reliance is on section 3443, and the only requirement of the statute is that some of the money which the purchaser had paid for the property should be later refunded to the purchaser. The fact that the occasion for the refund had to do with advertising does not relate the instant problem to the one decided in Fitch, and Ayer [Ayer Co. v. United States, 93 Ct.Cl. 386, 38 F.Supp. 284 (1941)]." 277 F.2d at 931.

I cannot agree with the result reached in the General Motors case for two reasons. First, the majority failed to recognize the necessary complementary nature of Sections 4216 and 6416 (b) (1) and failed to read the two sections in pari materia. Second, the majority did not consider the Fitch case as precedent.

Although it is fair to assume that the Fitch case itself directly involved only so-called *national* selling and advertising expenses, this court is unable to agree with plaintiff's interpretive distinction of that case.[2] This interpretation, fallaciously in my opinion, attempts: First: To limit the thrust of Fitch to national selling and advertising expenses as distinguished from local advertising expenses incurred by dealers and reimbursed by the manufacturer. Second: To raise a divisive line between advertising and selling expenses incurred *prior* to the time of actual shipment *and* local advertising expenses incurred *after* the shipment is made by the manufacturer.

Neither of these differentiations appears logical: (1) The local advertising conducted by the retail dealer, even if it seeks sales through the retailer's particular outlet, solicits sales (as far as reimbursement is concerned) solely for the manufacturing of plaintiff's goods; (2) The time of expenditure is a false demarcation since the expenditures for national advertising may in some instances be made *before* and in some instances *subsequent* to the date of shipment.

In other words, this court is fully aware that there are some valid distinctions between local and national advertising. There is no doubt that local advertising is traditionally done by the retailer and usually occurs after a particular purchase from the manufacturer.[3] Distinctions based upon time of occurrence and traditional practices do not aid this court in resolving the question before it.

In determining whether the reimbursements made to retailers under the cooperative advertising plan in this case are bona fide readjustments of the sales price pursuant to Section 6416, a practical analysis of the cooperative advertising plan is required. First, when the taxpayer reimbursed the retailer he was in actuality paying for something he had agreed to as part of the consideration of the purchase price. Second, an allowance as used in Section 6416 must work a "readjustment" or reduction in the sales price. Here, there has been no reduction in the sales price. The taxpayer still has the amount the retailer paid for the goods. Although the taxpayer did reimburse the retailer up to 10% of the retailer's order, it is only fulfilling its agreement to deliver its goods and to pay part of the retailer's advertising expense. Third, under the facts of this case there is no valid distinction between a manufacturer's national advertising and its advertising done throughout the country by its dealers via the cooperative advertising plan. The effect of the retailer's participating in the cooperative advertising plan, taken as a whole, as in reality it must, is national advertising of the taxpayer's products. Fourth, the cooperative advertising plan directly aids the taxpayer. The taxpayer cannot deny that local advertising will help sell his products. Fifth, in the last analysis, the sale of an advertised product, whether advertised nationally or locally, is contemplated by the taxpayer at the time of the sale to its vendees. The taxpayer can accurately predict in computing its general sales policy and sales price that a maximum of 10% of its projected sales will be expended under the cooperative advertising plan. Therefore, the cost of advertising must be included in the sales price and any subsequent rebate for lo-

2. The only indication in the opinions deciding the Fitch case that national advertising was involved is the fact that the taxpayer paid the advertising costs.

3. Senate Report No. 1916, August 25, 1960, U.S.Code Cong. & Ad.News, 86th Cong., 2nd Sess.1960, Vol. 2, p. 3800.

cal advertising does not work a bona fide readjustment of the sales price.[4]

The taxpayer is correct that any subsequent transactions between the manufacturer and the retailer resulting in a rebate must be tested by the effect the transaction has on the sales price or manufacturer's f. o. b. price. Therefore, the taxpayer argues, as does the majority in the General Motors case, supra, that every rebate readjusts the sales price and, therefore, every rebate results in a valid readjustment of sales price pursuant to Section 6416. This contention, however, is without merit since it fails to appreciate the necessary complementary nature of Sections 6416 and 4216. To declare, as does the taxpayer, that no administrative regulation may amend, alter, limit or otherwise restrict the clear language of a general statute[5] is of no assistance to the court in the present case. The problem is whether the regulations of 1958 alter or amend the statute (Acker v. Commissioner, 258 F.2d 568, 577 (6 Cir. 1958), aff'd. 361 U.S. 87, 80 S.Ct. 144, 4 L. Ed.2d 127) or operate to create a rule out of harmony with the statute (Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936). In other words, this mode of the taxpayer's approach begs the fundamental question, namely, whether the statute itself authorizes the allowance claimed. For the reasons already stated, the statutes as they existed prior to the 1960 amendment do not authorize a refund of excise taxes for reimbursements made under a cooperative advertising plan.

■ As already indicated, the taxpayer contends that Treasury Regulation 330.1–2 is invalid since it tends to amend, modify, alter, limit or otherwise restrict the clear language of a statute which it purports to administer or interpret. The taxpayer also contends that the regulation is invalid since it is in direct conflict with the long-standing consistent administrative interpretations of the Treasury Department, citing Fisher Flouring Mills Co. v. United States, 270 F.2d 27 (9 Cir. 1959) and United States v. Leslie Salt Co., 350 U.S. 383, 76 S. Ct. 416, 100 L.Ed. 441 (1956). These contentions are without merit. It is clear that the Treasury Regulation does not alter or amend the statute. Rather, it clarifies and reinforces a fair reading of Sections 4216 and 6416(b)(1). There are generally two restrictions or limitations upon the power to establish administrative interpretations. First, the interpretation cannot contradict the clear language of a coherent and unambiguous statute. Second, if the rulings over a period of time have been consistent in interpretation of a particular phrase or clause, these cannot be reversed unless there is a change by Congressional amendment of the statute. United States v. Leslie Salt Co., supra; Fisher Flouring Mills Co. v. United States, supra. Since these regulations do not contradict the clear language of the statute, the question is, do they contradict a consistent and long-standing interpretation of the Treasury Department on the problem of advertising expenses? The answer is clear; they do not. As indicated in part F, infra, there has been no consistent and long-standing interpretation of the Treasury Department on the question of advertising expenses.

■ The law is clear that the government is not bound by a previous interpretation of the Commissioner, even if it be assumed that 'the prior interpretation was favorable to the position of the present taxpayer. Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438

---

4. The dissenting opinion of Judge Whitaker in which Chief Judge Jones concurs in the General Motors case, supra, contains an excellent analysis of the practical effect of local advertising.

5. Citing, among other cases, by plaintiff, United States v. Calamaro, 354 U.S. 351,

77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957); Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 669, 80 L.Ed. 990 (1936); United States v. Stapf, 309 F.2d 592 (5 Cir. 1962), cert. granted 372 U.S. 928, 83 S.Ct. 873, 9 L.Ed.2d 732 (1963).

(1941); Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101 (1939); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S. Ct. 707, 1 L.Ed.2d 746 (1957); Wolinsky v. United States, 271 F.2d 865 (2 Cir. 1959). See also Campbell v. Brown, 245 F.2d 662, 666 (5 Cir. 1957); Aran v. United States, 259 F.2d 757, 758 (9 Cir.), cert. denied 358 U.S. 866, 79 S. Ct. 100, 3 L.Ed.2d 100 (1958); Commissioner v. Air Reduction Co., 130 F. 2d 145 (2 Cir.), cert. denied 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546 (1942). In the Wolinsky case, supra, Judge Waterman wrote: "It is well settled that the Commissioner is permitted under Section 3791(b) of the 1939 Code, 26 U.S.C.A. § 3791(b), to nullify a prior ruling, based upon a mistake of law, by means of a new ruling having retroactive application. See Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 184, 77 S.Ct. 707, 1 L.Ed.2d 746, rehearing denied 353 U.S. 989, 77 S. Ct. 1279, 1 L.Ed.2d 1147." 271 F.2d at 868.

### F. PRIOR PUBLISHED RULINGS AND TREASURY REGULATIONS.

In 1923, ST 430, II–2 C.B. 300 (1923) was promulgated under Section 900 of the 1921 Revenue Act, ST 430 provided that a separate charge to a vendee for advertising was not to be included in the sales price for tax purposes. In the same year the Commissioner of Internal Revenue in ST 523, XI–2 C.B. 477 (1932) ruled that where, in billing a distributor or dealer, the manufacturer added a specific charge for advertising, such additional charge could be excluded from the selling price if the manufacturer could establish that the value of the services equalled or exceeded the amount collected from the customer. The ruling also provided that "all national advertising is an expense of manufacturer, and must be borne by him and not made chargeable against the customer's advertising reserve. Charges to customers for advertising should cover only local advertising." However, one year later,

in 1933, the Commissioner ruled in ST 678, XII–1 C.B. 415 (1933) that where a manufacturer sold merchandise to a department store and furnished the store with a demonstrator, paying all expenses plus commissions, the expenses and commissions could not be deducted from the sales price under Section 619 (Revenue Act of 1932). Therefore, as early as 1933, the Commissioner had not taken a definite or consistent stand on local advertising expenses. Since 1933 the Treasury Department did not issue any public rulings which dealt specifically with the problem of local advertising expenses.

An analysis of the Treasury Regulations issued under the Revenue Act of 1932 and the Internal Revenue Code of 1939 indicate, while not specifically referring to local advertising expenses as such, that local advertising expenses, pursuant to an agreement with a manufacturer, were to be included as part of the sales price.

Regulation 46 (1932 ed.) of the 1932 Act, Article 8, provided:

"Basis of Tax on Sales Generally—

"The tax is imposed on each sale by the manufacturer of the articles enumerated in these regulations.
"  *   *   *

"In general this [the basis of the tax] should be the manufacturer's actual price at the factory or place of production."

Article 12 provided:

"Exclusion of charges for transportation, delivery, insurance, installation, and other charges which have no connection whatever with the manufacturing process or with placing the article in a finished condition packed and ready for shipment, are to be excluded in computing the tax. Any additional charge which a purchaser would not be required to pay if he accepted delivery of the article at the factory may be so excluded."

**44**

The regulations under the 1939 Code were similar in effect. Regulation 46 (1940 ed.), paragraph 316.8, provided that the tax in general "should be the manufacturer's actual price at the point of distribution or sale."

Paragraph 316.12(b) provided:

"No other additional charge may be excluded unless * * * such charge properly is not to be included as a manufacturing or selling expense * * *."

 Therefore, this review of the prior Treasury Regulations indicates that there has been no long-standing position of the Treasury Department favorable to the taxpayer.

G. RATIFICATION.

Lastly, the plaintiff contends that the 1960 amendment to Section 6416, which clearly authorizes a readjustment in the sales price for local advertising expenses, effectuated a Congressional ratification of the reasoning of the majority opinion in the General Motors case, supra.

■■ The general rule is that where a statute or provision thereof has been reenacted by the legislative body in the same or substantially the same language, the lawmakers are presumed to have adopted the construction placed upon such statute or provision by the court of last resort unless the statute as reenacted clearly indicates a different intention. Crawford, Construction of Statutes, p. 437; Dollar Saving Bank v. United States, 19 Wall. 227, 86 U.S. 227 (1873); Ardsley Club v. Durey, 40 F.2d 293 (N. D.N.Y.1930); Edwards v. Wabash Ry. Co., 264 F. 610 (2 Cir. 1920).

The adoption by Congress of the amendment of September 14, 1960 by which readjustments for local advertising were specifically permitted was not a legislative affirmance of the interpretation taken by the majority in the General Motors case. The doctrine of legislative ratification of a judicial interpretation is hardly applicable to this legislative history. The repassage of a statute in the words of the previous enactment might well form the basis of such an argument.

However, when the new statute (1) specifically inserted words (including) "a readjustment for local advertising" and when the Committee's report further stated (2) "Your committee concluded that due to the *confusion* as to the status of advertising charges, in determining manufacturers' sales prices, there was need for *statutory clarification*, as well as some limitations as to the extent to which such exclusions or adjustments should be allowed" (Italics supplied) U. S. Code Cong. & Ad. News, 86th Cong., 2nd Sess. 1960, Vol. 2, p. 3800) and (3) provided for certain limitations on local advertising deductions, there is no basis upon which to support a contention of a subsequent ratification by Congress of the determination made in the General Motors decision.

Accordingly, the statute does not support the claim for refund of the taxpayer. The cross-motion of the government for summary judgment is granted with costs.

Settle judgment on notice.