WATERMAN–BIC PEN CORPORATION, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 409, Docket 28629.

United States Court of Appeals Second Circuit.

Argued April 9, 1964.

Decided June 9, 1964.

Leon Alexandroff, New York City (Gerald Meyer, Neil A. Pollio, and Phillips, Nizer, Benjamin, Krim & Ballon, New York City, on the brief), for appellant.

Robert Arum, Asst. U. S. Atty., Southern Dist. of New York, New York City (Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, on the brief), for appellee.

Before SWAN, MOORE and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

The sole issue presented by this appeal is whether amounts credited to a retailer or wholesaler to reimburse expenditures for local advertising pursuant to a cooperative local advertising program constitute price readjustments entitling a manufacturer to an excise tax refund prior to the 1960 amendment of Section 6416(b) (1) of the Internal Revenue Code of 1954, 26 U.S.C. § 6416(b) (1). The United States District Court for the Southern District of New York, Richard H. Levet, D. J., decided the question in the negative, and the taxpayer has appealed. Though the question is close, we think the district court correct and affirm the judgment.

The Waterman-Bic Pen Corporation, a manufacturer of pens and other writing instruments, sued for a refund of $13,827.89 on payments of its manufacturer's excise tax from November 20, 1958 through March 31, 1960. During the tax period in question, Waterman-Bic spent more than $137,000 reimbursing its vendees under its cooperative advertising program. Under this program Waterman-Bic agreed to allow a credit of up to 10% of the price of a vendee's order as reimbursement for the costs of locally advertising Waterman-Bic's products. Participation in the program was optional with the vendee, but in order to be reimbursed, a vendee had to comply with the following conditions:

(1) Only the products of Waterman-Bic were to be advertised, though a proportionate reimbursement would be made if Waterman-Bic's products were advertised with another's products.

(2) Waterman-Bic's products were to be advertised at list price only.

(3) Advertising costs had to be reasonable.

(4) Proof of performance had to be submitted to Waterman-Bic.

Section 4201 of the 1954 Internal Revenue Code imposes an excise tax of 10%

on the price for which a manufacturer sells mechanical pencils, fountain pens, and ball point pens. The manufacturer's sales price is defined by § 4216(a) of the 1954 Internal Revenue Code, which provides:

"In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary or his delegate in accordance with the regulations."

In Fitch Co. v. United States, 323 U. S. 582, 584, 65 S.Ct. 409, 411, 89 L. Ed. 472 (1945), the Supreme Court construed this section to equate the manufacturer's sales price with the f. o. b. wholesale price. "In essence, all manufacturing and other charges incurred prior to the actual shipment of an article and reflected separately or otherwise in the f. o. b. wholesale price are to be included in the sale price underlying the tax, while all charges incurred subsequent thereto are to be excluded." The Court rejected the contention that a manufacturer's national advertising costs should be excluded from the sales price as a subsequent "transportation, delivery, insurance, installation, or other charge" within the meaning of § 4216(a).

"Advertising and selling expenses incurred by a manufacturer, such as petitioner clearly fall within the class of charges which Congress intended to be included in the tax base. Regardless of whether we consider such expenses technically as manufacturing costs, it is obvious

that they are incurred prior to the actual shipment of articles to wholesale purchasers and that they enter into the composition of the wholesale selling price. Even if the purchaser accepts delivery at the factory, he pays for the advertising and selling expenses. Thus they must be included in the taxable sales price." 323 U.S. at 584–585, 65 S.Ct. at 411.

Waterman-Bic seeks to distinguish its position from that of the taxpayer in the Fitch case on two theories. The first is that the sums expended for advertising allowances should be considered price readjustments under § 6416(b) (1) rather than exclusions from the sales price under § 4216(a). The second is that there is such a fundamental difference between local and national advertising that Congress intended to treat them differently for excise tax purposes.

■ The district court rejected both these theories, holding that an allowance for local advertising does not constitute a price readjustment within the meaning of § 6416(b) (1). Judge Levet reasoned that § 4216(a) and § 6416(b) (1) must be read in *pari materia*, and that the differences between national and local advertising were insufficient to distinguish the Fitch case. In doing so, Judge Levet declined to follow the three-two decision of the Court of Claims in General Motors Corp., Frigidaire Division v. United States, 277 F.2d 929, 149 Ct. Cl. 749, (1960), which held that a local advertising allowance constituted a readjustment of the sales price. We agree with Judge Levet's thorough and well reasoned approach.

Section 6416(b) (1) provides:

"Price readjustments.—If the price of any article in respect of which a tax based on such price, is imposed by chapter 31 or 32, is readjusted by reason of the return or repossession of the article or a covering or container, or by a bona fide discount, rebate or allowance, the part of the tax proportionate to the part of the price repaid or credited to

the purchaser shall be deemed to be an overpayment."

It was first enacted in substance as § 621(a) of the Revenue Act of June 6, 1932, 47 Stat. 267 (1932). While the legislative history of this provision is scanty, the accompanying report of the House Ways and Means Committee (H.R. Rep. 708, 72nd Cong., 1st Sess. 34, 38–39; 1939–1 CB (Part 2) 484–485) strongly suggests that § 621(a) was intended to be read in conjunction with the section defining sales price (now § 4216(a)).

> "Under subsection (a), refund or credit may be allowed in cases where the sales price has been readjusted after the sale. This provision covers readjustments such as cash or quantity discounts, credit for return of goods or containers, and any other bona fide rebate or allowance amounting to a change in the sales price."

The purpose of § 6416(b) (1) is to prevent inequities attributable to fixing an arbitrary point in time as the date for determining the sales price by permitting a refund where subsequent events have resulted in the downward readjustment of the sales price. It was not intended to create an independent source of charges excludable from the sales price.

The taxpayer's second theory is more troublesome. Certainly there are basic differences between national and local advertising. A manufacturer's advertising of consumer goods and services is generally directed towards consumers or tradesmen. Relatively little is designed to induce direct purchases by the consumer. The bulk of this advertising is indirect, designed to induce tradesmen to purchase the manufacturer's products by building up the reputation of his brands and enhancing their desirability through ideas concerning the goods themselves or the reputation of the manufacturer. See Borden, The Economic Effects of Advertising 20 (1942). See also General Motors Corp., Frigidaire Division v. United States, supra, 277

F.2d 929, 149 Ct.Cl. 749, 761–762 (1960). On the other hand, local or retail advertising is generally designed to induce direct action, stimulating immediate sales for the retailer. Its purpose is to develop store traffic and to build up the store's reputation and personality. See Borden, supra, at 114. See also General Motors Corp., Frigidaire Division v. United States, supra, 277 F.2d 929, 149 Ct.Cl. at 762–763.

However, it does not follow that any allowance for local advertising given a vendee is in effect a price reduction. The crux of the appellant's argument is that since local advertising is traditionally engaged in by the retailer rather than the manufacturer, it is a normal selling expense of the retailer. To the extent the manufacturer assumes one of the retailer's normal expenses, the manufacturer is necessarily reducing his price. But this would be true only if the manufacturer received no corresponding services for his payments, either because the retailer would have engaged in exactly the same kind of advertising if he had not received an allowance or because the retailer simply pocketed the money and rendered no promotional services.

Actually, a cooperative advertising allowance may serve several functions. To be sure, it can easily be used as a disguised price reduction. See R. H. Macy & Co. v. F. T. C., 326 F.2d 445, 448–449 (2 Cir. 1964); Lyon, Advertising Allowances 23 (1932). However, it is more generally a payment to a retailer for the rendering of mutually beneficial services. Some of the multiplicity of purposes for which manufacturers have granted advertising allowances are to secure aggressive sales promotion, or to secure retail representation in a field crowded with competitive brands. See Lyon, supra, at 64; Lockley, Vertical Cooperative Advertising 135 (1931).

Here it is clear that Waterman-Bic granted its vendees an advertising allowance for the rendering of mutually beneficial services. Participation was optional with the vendee, but the vendee

who performed no promotional services received no allowance. Nor would Waterman-Bic pick up the tab for inflated advertising expenditures. It required proof of performance and that advertising costs be reasonable. It also required that its products be advertised only at list price. To prevent a vendee from shifting all its advertising expenses to Waterman-Bic, reimbursement was limited only to the sums expended to advertise Waterman-Bic's products. Moreover, the cooperative program permitted the vendee to secure reimbursement for advertising any Waterman-Bic product, not just the particular product sold. These are not the earmarks of a disguised price reduction but of a program calculated to supplement a national advertising campaign, on which Waterman-Bic expended some $63,000 during the tax period in question, through point of purchase promotion. Thus, these cooperative advertising expenses seem more appropriately categorized as manufacturer's rather than retailer's selling costs.

Whether local advertising costs are incurred prior or subsequent to the shipment of the goods is irrelevant. Section 6416(b) (1) comes into play only after the goods have been sold and its purpose is to ensure that certain subsequently incurred charges are in effect treated as if they had been incurred by the time of the sale.

The taxpayer is correct in his contention that the consistent administrative practice of the Treasury from 1932 to 1956 permitted such expenditures to be credited as readjustments of the sales price. See Ruling S.T. 523, XI–2 C.B. 477 (1932); Hearings on Excise Tax Technical and Administrative Problems Before a Subcommittee of the House Committee on Ways and Means, 84th Cong., 2d Sess., Part 2 at 57–59 (1956); Senate Report No. 1916, 86th Cong., 2d Sess., quoted in 2 U.S.Code Cong. & Adm. News, p. 3798 (1960). This practice is entitled to considerable weight, but the Treasury may reverse its position to correct a mistake of law. Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 85 L.Ed. 1438 (1941); Wolinsky v. United States, 271 F.2d 865 (2 Cir. 1959). This the Commissioner did in 1958 by promulgating Regulations 330.1–1 to 330.1–3.[1]

1. "§ 330.1–1 Determination of Price for Purposes of Manufacturers Excise Taxes.
    \*       \*       \*       \*       \*

"(b) Any charge which is required by a manufacturer, producer, or importer to be paid as a condition to his sale of a taxable article and which is not attributable to an expense falling within one of the exclusions provided in section 3441(a) of the Internal Revenue Code of 1939 is includible in the sale price upon which the tax is based. It is immaterial for this purpose that the charge may be paid to someone other than the manufacturer, producer, or importer, or that it may be separately billed to the purchaser as one earmarked for expenses incurred or to be incurred in his behalf, as for example, for advertising at the national or local level, for demonstration or display of the article, for sales promotion programs, or otherwise.

"§ 330.1–2 Readjustment of Price for Purposes of Manufacturers Excise Taxes.
    \*       \*       \*       \*       \*

"(b) In determining whether a manufacturer, producer, or importer has made a bona fide discount, rebate, or allowance to a purchaser, for purposes of section 3443(a) (2) [of the Internal Revenue Code of 1939], the basic consideration is whether the price actually paid by, or charged against, the purchaser has in fact been reduced by subsequent transactions between the parties. In general, the price will be considered as having been readjusted by reason of a bona fide discount, rebate, or allowance only if the manufacturer, producer, or importer repays a part of the purchase price in cash to his vendee, or credits the vendee's account, in consideration of factors which, if taken into account at the time of the original transaction, would have resulted at that time in a lower sale price. For example, a price readjustment is considered to have been made when a bona fide discount, rebate, or allowance is given in consideration of such factors as prompt payment, quantity buying over a specified period, the vendee's inventory of an article when new models are introduced, or a general price reduction affecting

The 1960 amendment to § 6416(b) (1)[2] obscures as much as it clarifies in telling us what Congress intended to tax originally. The legislative history indicates only that it was intended to clarify a very confused area of the law. See Senate Report No. 1916, supra, 2 U.S.Code Cong. & Adm.News at page 3800 (1960). Indeed, it can just as well be argued that the very fact that Congress found it necessary to exclude local advertising specifically is evidence that it had not meant to do so previously. See Fitch Co. v. United States, supra, 323 U.S. at 586, fn. 2, 65 S.Ct. at 412.

The judgment of the district court is affirmed.

---

articles held in stock by the vendee. On the other hand, repayments made by a manufacturer, producer, or importer to his vendee do not effectuate price readjustments if given in consideration of an expenditure made or to be made by the vendee for national or local advertising, for demonstration or display of the manufacturer's product by the vendee, or other similar circumstances under which the vendee has been or is required to incur an expense which, if treated as a separate item in the original transaction and not included in the price billed for the taxable article, would nevertheless have been includible in the price of the article for purposes of computing the tax.

"§ 330.1-3 Application of Regulations.

"(a) *In general.*—Except as provided in paragraph (b) of this section, the regulations in this part shall be applicable in respect of sales made on and after March 1, 1939.

"(b) *Exceptions.*—(1) *Published rulings.*—S.T. 430, C.B. II–2, 300 (1923), and S.T. 523, C.B. XI–2, 477 (1932), to the extent such rulings are inconsistent with the regulations in this part, are revoked effective with respect to sales made on and after the first day of the first calendar month which begins more than 30 days after the date of publication of this part in the Federal Register.

"(2) *Unpublished rulings.*—Any unpublished ruling of the Internal Revenue Service, insofar as it is inconsistent with the regulations in this part, is revoked. The extent to which the revocation of any such unpublished ruling shall be applied without retroactive effect for any period prior to the first day of the first calendar month which begins more than 30 days after the date of publication of this part in the Federal Register, shall be determined in accordance with the general policy of the Internal Revenue Service as set forth in paragraph (i) (4) of section 601.201 of the Statement of Procedural Rules (26 CFR 601.201(i) (4) ; C.B. 1955–2, 948).

"Par. 2. The regulations prescribed by paragraph 1 of this Treasury decision are hereby prescribed under and made applicable to sections 4216 and 6416(b) (1) of the Internal Revenue Code of 1954 (which sections correspond to sections 3441 and 3443(a) (2) of the Internal Revenue Code of 1939) until superseded by regulations issued under such sections of the Internal Revenue Code of 1954."

2. In 1960 the statute was amended to provide:

"Price readjustments.—If the price of of any article in respect of which a tax, based on such price, is imposed by chapter 31 or 32, is readjusted by reason of the return or repossession of the article or a covering or container, or by a bona fide discount, rebate, or allowance, including (in the case of a tax imposed by chapter 32) a readjustment for local advertising (but only to the extent provided in section 4216(f) (2) and (3)), the part of the tax proportionate to the part of the price repaid or credited to the purchaser shall be deemed to be an overpayment."

Section 4216(f) (1) provides:

"(1) Exclusion.—In determining, for purposes of this chapter, the price for which an article is sold, there shall be excluded a charge for local advertising (as defined in paragraph (4)) to the extent that such charge—

"(A) does not exceed 5 percent of the price for which the article is sold (as determined under this section by excluding any charge for local advertising),

"(B) is a separate charge made when the article is sold, and

"(C) is intended to be refunded to the purchaser or any subsequent vendee in reimbursement of costs incurred for local advertising."