**CHRYSLER CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 19418.

United States District Court
E. D. Michigan, S. D.

Dec. 30, 1960.

———◆———

Brian T. O'Keefe, J. Paul Smith, Detroit, Mich., John J. Costello and John J. Loflin, Jr., New York City, of counsel, for plaintiff.

Harold S. Larsen, Dept. of Justice, Washington, D. C., George E. Woods, U. S. Atty., Detroit, Mich., for defendant.

FREEMAN, District Judge.

The present controversy arises out of cross-motions for summary judgment filed by the parties to an excise tax refund case.

In essence, the facts as stipulated by the parties are as follows: Plaintiff is an automobile manufacturer. The sales of automobiles manufactured by plaintiff are subject to the manufacturers' excise tax imposed by the pertinent sections of the Internal Revenue Code. In connection with the automobiles manufactured and sold by it during the calendar year of 1956, plaintiff expressly warranted that such automobiles were free from any defective materials or workmanship. This warranty was limited to a period of 90 days or 4,000 miles of use, whichever event should occur first, commencing at the time of sale of the vehicles by plain-

tiff's dealers or distributors to their retail customers. The warranty further provided that any defective part be returned to plaintiff with transportation charges prepaid and that such warranty was given in lieu of all other express or implied warranties by plaintiff. As a matter of policy, however, plaintiff did not adhere strictly to the terms of the warranty, but made adjustments with its vendees for materials and labor costs in connection with replacement of parts which proved defective in materials or workmanship within 12 months or before the vehicle was driven 12,000 miles. In addition, plaintiff did not require the return of all defective parts to its factory with transportation charges prepaid. Instead, in over 95% of all cases, plaintiff made cash payments or gave credit to its dealers and distributors in settlement of warranty claims in an amount in excess of the cost incurred by such dealers or distributors in performing repair or parts replacement services for the retail customers. With respect to replacement parts, such credits or cash payments usually amounted to 110% of the dealers' or distributors' purchase prices. Subsequent to April 2, 1956, the credits extended to the dealers for replacement labor on warranty services for retail purchasers amounted to 100% of the established retail labor rates of such dealers. Such rates were in excess of the dealers' actual labor costs.

The relevant statutes in the Internal Revenue Code of 1954 provide for a manufacturers' excise tax on automobiles equivalent to 10% "of the price for which so sold". (26 U.S.C. § 4061)

26 U.S.C. § 4216 defines "price" as follows:

"(a) *Containers, packing and transportation charges.*—In determining * * * the price for which an article is sold, there shall be included any charge for coverings and containers * * * and any charge incident to placing the article in condition packed ready for shipment * * *. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary or his delegate in accordance with the regulations."

26 U.S.C. § 6416 provides in pertinent part as follows:

"(b) *Special cases in which tax payments considered overpayments.*—Under regulations prescribed by the Secretary or his delegate, credit or refund (without interest) shall be allowed or made in respect of the overpayments determined under the following paragraphs:

"(1) *Price readjustments.*—If the price * * * is readjusted by reason of * * * a bona fide *discount, rebate, or allowance,* the part of the tax proportionate to the part of the price repaid or credited to the purchaser shall be deemed to be an overpayment." (Emphasis supplied.)

Prior to the institution of the present suit, plaintiff brought an action against the defendant in the Court of Claims in which plaintiff sought a tax refund in the amount of $5,344,864.48 for the period from April 16, 1950, to December 31, 1955. The theory of the complaint was that such amount constituted an overpayment of manufacturers' excise tax by reason of the fact that plaintiff had incurred expenses in a proportionate amount in satisfying its warranty obligations with respect to automobiles sold during such period.

On April 17, 1959, the Court of Claims, in a short per curiam order, granted defendant's motion for judgment on the pleadings and dismissed plaintiff's petition. Chrysler Corporation v. United States (Court of Claims No. 168–56), certiorari denied 361 U.S. 887, 80 S.Ct. 158, 4 L.Ed.2d 122.

The present action is substantially identical to the case before the Court of Claims except that the tax year in issue is the calendar year of 1956 and the refund sought is in the amount of $2,139,-

810.75. The express warranty involved here is identical to that in the Court of Claims case, although plaintiff's warranty policies and the claim procedure were somewhat modified on April 2, 1956.

In view of the above facts and statutes, the questions before the Court are:

1. Is plaintiff collaterally estopped from pursuing this action in view of the decision by the Court of Claims?

2. Does a genuine issue as to any material fact exist?

3. If not, which party is entitled to judgment?

With respect to the first question stated above, it appears that the defendant set up the affirmative defense of collateral estoppel in its answer, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. However, in its brief, defendant did not address itself to this issue, and at the time of oral arguments, defendant expressly stated that it wished to withdraw the defense of collateral estoppel. Both parties, therefore, agreed that the decision of this court should be on the merits.

■ This court is of the opinion that the defense of collateral estoppel may be waived as may any other affirmative defense, and that this case must consequently be decided on its merits.

■ With respect to the remaining two questions stated above, the precise issue as stated by the parties is "whether plaintiff is entitled to a refund of federal excise tax on the ground that the payments and credits granted to its dealers or distributors represent price readjustments for purposes of § 6416(b)(1) of the Internal Revenue Code of 1954."

It is the contention of the plaintiff that the cash payments or credits from plaintiff to its dealers or distributors in connection with claims made pursuant to the warranties constitute a bona fide discount, rebate or allowance in readjustment of the purchase price. In support of this contention, plaintiff argues that the price of any automobile sold must be the actual cash or credit received by plaintiff from its dealers, which necessarily is the amount received by plaintiff from its dealers minus any amount paid to such dealers in satisfaction of plaintiff's warranty obligations and in accordance with its policy of post-warranty adjustments.

Defendant contends that any subsequent transactions relating to the warranty have nothing to do with the purchase price of an automobile, and that such transactions simply constitute a purchase by plaintiff of the services of its dealers for the purpose of satisfying plaintiff's warranty obligations.

It clearly appears that the essential nature of these transactions was one creating an agency relationship between plaintiff and its dealers. In other words, plaintiff, in effect, hired its own purchasers to satisfy its (plaintiff's) obligations under the warranty with respect to any defective automobile. The express warranty involved here, of course, obligated the plaintiff to remedy any defect in an automobile at its factory and required shipment of such automobile to the factory at purchaser's expense. Instead of strictly adhering to this procedure, plaintiff, for reasons of its own, chose to eliminate the transportation expense and attendant inconveniences for the purchaser by engaging the services and facilities of the purchaser to discharge its warranty obligations, for which services the dealers were reimbursed at a normal rate. The mere fact that plaintiff's own dealers were also its agents for purposes of repair under the warranty does not detract from the essential nature of these transactions.

Plaintiff's ledger sheet of a particular automobile might, therefore, disclose a certain price received by plaintiff from the purchaser and then a payment to the same purchaser for services performed with respect to the warranty of the automobile. Defining the "price" of the automobile as the ultimate net amount of money received for such automobile, it is plaintiff's contention that a diminution or "readjustment" of the price has taken

place. Plaintiff thus argues that regardless of the nature of the transactions, the end result inescapably is one of readjustment of the price.

The answer to this argument is well stated in defendant's brief as follows:

"Can it be said that a manufacturer-seller, or a dealer, or lender of the monies who simply replaces for a consumer-purchaser, in accordance with a warranty, a defective part of a product manufactured and sold by the manufacturer has actually readjusted the price which the user had been compelled to pay to obtain the product originally? What part of the price was refunded or credited to the user? In such circumstances, the manufacturer-seller simply readjusted the machine to make it serve the purpose originally intended. There was no readjustment whatever of the "price" paid by the purchaser to obtain the article. The manufacturer-seller, in making the repair or replacement under the warranty, merely furnished the consumer-purchaser at a later date with the kind and quality of merchandise which should have been, but was not, delivered to him in the first instance.

\* \* \* \* \* \*

" \* \* \* whatever expenses a manufacturer-seller may incur to place in the hands of an ultimate purchaser-user the non-defective product which the purchaser-user bargained and paid for have no relation to the stated and unchanged price which the purchaser was required to pay to obtain the product."

■ It further appears that payments or credits in consideration of parts supplied and services rendered clearly do not constitute "discounts" or "rebates" as these terms are commonly understood. By the same token, the term "allowances" does not encompass the payments or credits involved here since the well established rule of construction of *ejusdem generis* limits the meaning of "allow-

ances" to one closely related to the meaning of "discounts" and "rebates".

This court, therefore, concludes that the transactions involved here are *not* bona fide discounts, rebates or allowances in readjustment of the price within the meaning of 26 U.S.C. § 6416.

This conclusion is amply supported by several cases before the Court of Claims turning on the very issue involved here. General Motors Corporation, Frigidaire Div., v. United States, 128 Ct.Cl. 465, 121 F.Supp. 932 (June 8, 1954); General Motors Corp., Frigidaire Div., v. United States, Ct.Cl., 146 F.Supp. 220 (Nov. 6, 1956); General Motors Corp., Frigidaire Div., v. United States, 142 Ct.Cl. 878, 147 F.Supp. 739 (Jan. 16, 1957); Ford Motor Co. v. United States, 140 Ct. Cl. 487, 156 F.Supp. 554 (Dec. 4, 1957); General Motors Corp., Frigidaire Div., v. United States, 142 Ct.Cl. 842, 163 F. Supp. 854 (July 16, 1958); and Chrysler Corp. v. United States, Court of Claims No. 168–56, (April 17, 1959).

Although not entirely consistent in all respects with the other cases, the third General Motors case, 147 F.Supp. 739, clearly shows that all of the Judges on the Court of Claims agreed that amounts spent in fulfilling a warranty do not constitute a discount, rebate or allowance, within the meaning of 26 U.S.C. § 6416. This conclusion was reiterated in the Ford Motor Company case, 156 F.Supp. 554, 555, which involved an express warranty for all practical purposes identical to the warranty involved here. In the course of the opinion the court stated:

"In the General Motors case, supra, the seller made the necessary repairs; in the present case, the purchaser did so, and then was reimbursed by the manufacturer. In each case the expenditure by the manufacturer was for correcting a defect. It was not a readjustment of the sales price.

"The sales price was for an article free of defects. The sums spent for correcting defects were to fulfill the

seller's part of the bargain, to deliver a sound article.

"It makes no difference that the defect appeared after the dealer had resold the article. Under his contract of resale, he was obligated to his purchaser to make good any defects appearing in a certain period, and the manufacturer was in turn liable to the dealer to make them good. The dealer, who was the purchaser from the manufacturer, neither lost anything nor gained anything on account of remedying the defects. Therefore, there could not have been a rebate or allowance to him.

"2. Plaintiff devotes one paragraph of its brief to expenditures made to remedy defects discovered after the warranty period, in accordance with the seller's established policy as set forth in written communications from the seller to the purchaser. The character of these expenditures does not differ from the others. They were made in a liberal interpretation of the obligation of the seller to deliver a sound article, as an agreed extension of its obligation under the warranty. That the defect appeared after the warranty period, strictly construed, makes no difference. The expenditures were still made to give the purchaser what he had contracted to buy, and in accordance with the seller's policy of which the purchaser had been informed before the sale. After the expenditures were made, the contractor got no more than he had paid for, to wit, a sound article; he certainly did not get back any part of the purchase price."

Plaintiff urges that the Ford Motor Company case is inapplicable because in the present case the purchasers *did* gain

something by realizing a profit on the labor and parts expended in making warranty repairs. That fact is not material, however, since, as already stated, plaintiff's dealers have the dual status of purchasers and repair agents. Any gain realized by such dealers by reason of making warranty repairs was a result of activities in their "repair agent" status. As "purchasers", the dealers recovered none of the purchase price. In other words, the dealer, in its capacity as purchaser of the automobile, never received anything to which it was not entitled in consideration of the original purchase price of the automobile. This thought was persuasively expressed by Judge Whitaker of the Court of Claims in the latest General Motors case, 277 F.2d 929, 934 (May 4, 1960):

"When a manufacturer pays an expense which it has promised to pay at the time of the original sale, it can never be a reduction in the sales price. Its payment is, in fact, a part of the consideration for the sales price."

Pursuant to the above, this court is of the opinion that the payments by plaintiff to its dealers for services rendered and parts supplied in making warranty repairs do not constitute a *bona fide allowance* (or discount or rebate) with respect to the price of the automobile and, further, that such payments do not constitute a *price readjustment* but simply result in giving the purchaser that for which he bargained and paid.

The court further finds that no genuine issue of material fact exists in the present case.

Defendant's motion for summary judgment, therefore, must be granted, and plaintiff's motion for summary judgment hereby is denied.

An appropriate order may be submitted.