Dureee, Judge,
delivered the opinion of the court:
This is a suit for the refund of a purported overpayment of a manufacturers’ excise tax 'in the sum, as conceded by defendant, of $131,708.78. The question presented is whether or not payments made by a manufacturer to its dealers in order to reimburse the dealers for extra compensation paid by the dealers to their salesmen in furtherance of the manufacturer’s plan to increase sales, constitutes an excise tax price readjustment under Section 3443(a) (2) of the Internal Eevenue Code of 1939 (26 U.'S.'C. § 3443(a) (2) (1952)), and Section 6416(b) (1) of the Internal Eevenue Code of 1954, (26U.S.C.§ 6416(b)(1) (1968)).
Plaintiff herein is a manufacturer of various brands of automobiles including Pontiacs. In the fall of 1954 the Pontiac Motor Division planned to introduce as its 1955 model an automobile that had been completely restyled. Plaintiff recognized that both it and the Pontiac dealers would benefit if inventories of the 1954 models were eliminated or sharply reduced prior to the introduction of the 1955 models. As a means of clearing existing inventories of 1954 model Pontiacs, plaintiff on August 4,1954 announced to its retail dealers a plan under which it agreed to pay the dealers a bonus of $75 for each new 1954 model Pontiac that the dealers had purchased after August 2,1954. The $75 bonus was payable at the end of the month in which the purchase was made. In addition to the $75 bonus, plaintiff proposed to pay such dealers another $25 for each new 1954 model Pontiac that they sold between August 2, 1954 and October 20, 1954, the date on which the 1955 models were to be introduced, provided that the dealers satisfactorily proved that they had paid the retail salesmen responsible for mailing the sale *304 a corresponding amount as additional compensation. Before payment was made on the $25 bonus, Pontiac Division of plaintiff required its dealers to submit a written certification of performance to the Pontiac zone managers. The zone managers were in turn directed to check dealership sales performance against that of the prior year as a means of guarding against excessive commission claims.
Section 3403(b) of the Internal Eevenue Code of 1939 (26 U.S.C. §3403 (lb) (1952)), and Section 4061(a)(2) of the Internal Eevenue Code of 1954 (26 U.'S.C. § 4061(a) (2) (1958)), required that .automobile manufacturers such as plaintiff pay an excise tax on all articles manufactured and sold by it. The tax paid was based on a percentage of the manufacturer’s wholesale price. Section 3441 (a) of the Internal Eevenue Code of 1939 (26 U.S.C. § 3441(a) (1952)), and Section 4216(a) of the Internal Eevenue Code of 1954 (26 U.S.C. § 4216(a) (1958)), provided for the determination of the price on which the excise tax was levied. Section 3441 (a) of the 1939 Code provided:
§ 3441. Sale price.
(a) In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Commissioner, in accordance with the regulations.
Section 4216 (a) of the 1954 Code reads almost identically.
Plaintiff dutifully filed its excise tax return for the year 1954 based upon the price at which the automobiles were sold to the dealers. In addition, plaintiff took a credit against the tax liability in the amount of such taxes proportionate to payments made pursuant to the aforementioned cash bonus plan. The credit was taken on the ground that such payments constituted bona fide discounts, rebates or allowances that readjusted the sales price under § 3443 (a) (2) of the *305 Internal Revenue Code of 1939 and § 6416(b)(1) of the Internal Revenue Code of 1954.
The applicable Code provisions provide as follows:
§ 3443. Credits and refunds.
(a) A credit against tax imder this chapter, or a refund', may he (Mowed or made.—
‡ $
S3 C+ E M* p 2 aw -B-g' © s O o o eS <D P§ ill's o o H*b CP a <r+- © tí o .9' © 9 H g s.-s h'B ^ b ® O O M 3tí— 9 o S' © , w C! ¿S' ?U.® © CP P 1-j o Q cd >-* hdow "§ 2 .9 eS §•£ tí * £ eá co 03 A 4 g-o ST®m. § a o ® " cn?oP H H>S -§ 2 * © S (3 go bo ! «-ef 55 g-^ tí co g ¡J. 5- @> © M H>g O - Hb H • í ¿¿r rr ft g CP ^ § S rCj ST % <2 — +3+3 O d O
oa g H I a q s A _ V1 S H > ■ ' Is! C0O
(b) Special cases in which tax payments considered overpayments. — "Under regulations prescribed by tbe Secretary or bis delegate credit or refund, without interest, shall be made of the overpayments determined under the following paragraphs:
(1) Price readjustments. — If the price of any article in respect of which a tax, based on such price, is imposed by chapter 81 or 32, is readjusted by reason ox the return or repossession of the article or a covering or. container, or by a bona fide discount, rebate or allowance, the part of the tax proportionate to the part of the price repaid or credited to the purchaser shall be deemed to be an overpayment.
The Commissioner of Internal Revenue allowed plaintiff a partial credit. In other words, he recognized and allowed a partial price readjustment as a result of the bonus plan. The portion of the bonus plan which the Commissioner believed to constitute a price readjustment was the provision for the $75 payments to the dealers. He refused to recognize as price readjustments the $25, payments that reimbursed the dealers for bonus commissions paid to their salesmen.
A deficiency was therefore assessed against plaintiff on May 8, 1958. On August 25,1958 plaintiff paid the amount of the assessment, consisting of $108,534.09, the principal amount of .the tax, together with interest thereon of $21,906.50, making an aggregate payment in the amount of *306 $130,440.59. On February 10, 1959 plaintiff paid an additional $1,268.19, respecting tax for which, credits had been taken in this respect in the returns filed by plaintiff for the year 1955. The total amount therefore paid by plaintiff was $131,708.78. After notice of disallowance by the Internal Eevenue of a claim filed by plaintiff for that amount, plaintiff filed suit in this court for the refund.
The issue before us now, therefore, is whether or not the $25 payments by plaintiff to the dealers to reimburse the dealers for commissions to the salesmen constituted a price readjustment within the meaning of the above cited statutes. More specifically, the question is whether or not the payments constituted bona fide discounts, rebates, or allowances.
This court discussed generally the manufacturer’s motivations in granting such bona fide discounts, rebates, or allowances in General Motors Corporation, Frigidaire Division v. United States, 149 Ct. Cl. 749, 752, 277 F. 2d 929, 930-931 (1960):
Discounts and rebates are given for various reasons but always, we suppose, because the giving of them will be of benefit to the giver. They are, we suppose, always welcomed by the receiver. A discount for prompt payment benefits the giver because it assures him against the loss of the debt, and gives him available working capital. A discount, or a rebate at the end of the year, because of the quantity purchased by the vendee is good for the seller because it induces the vendee to purchase and dispose of more of the seller’s goods. A promised discount on floor stocks in the hands of the yendee at the time of a model change is good for the seller because it reassures the vendee and causes him to maintain adequate stocks even though a model change is anticipated.
The same rationale of motivation was present in the case at hand. Pontiac was going to completely redesign their 1955 models. Such redesigning would necessarily make their 1954 models seem outmoded once the 1955’s were introduced. Plaintiff therefore wished to sell all or most of the 1954’s before the new models came out. They thus formulated the bonus plan as an incentive to the dealers to purchase the 1954’s from them. The Commissioner of Internal Kevenue undoubtedly recognized this motivation be *307 hind the bonus plan, when he allowed a price readjustment to plaintiff to the extent of the $75 payments paid to the dealers, for as the statute allowing readjustment states, the discount, rebate, or allowances must be a bona fide one.
We feel, however, that the Commissioner should have given more full consideration to the bonus plan from the dealer’s outlook before he decided to exclude the $25 payments. Certainly, the $75 payments to the dealer acted as an incentive to the dealer to purchase more cars from plaintiff. If, however, the dealers were not able to resell the cars to the general public, they would incur considerable losses. This fact was certainly self-evident both to the dealers and to plaintiff. The dealers needed some sort of a guarantee that they would not be caught with a huge inventory of 1954’s at the end of the year. This guarantee was given to them in the form of the $25 reimbursement by plaintiff for the comparable sum paid by the dealers to their salesmen for each auto sold. Thus, an incentive to sell the additional 1954’s was passed on to the salesmen. This promise of payment by plaintiff must have been regarded by the dealers as a prerequisite for them to purchase additional autos from plaintiff. In the least it had to be regarded as an integral part of the overall bonus plan without which said plan would have been unworkable.
The result of the totally integrated bonus plan was quite successful. The dealers bought many more autos from plaintiff than they ordinarily would have. The $75 allowance or rebate provided an incentive to them to purchase more, as did the additional $25 payments, which payments in turn acted as incentives on the salesmen. The success of this plan certainly was partially, and even largely attributable to the additional $25 payment. In any event, these two separate payments were both necessary ingredients to the successful implementation of the bonus plan. The Commissioner of Internal Eevenue determined that the plan constituted a partial rebate or quantity discount allowance, which in turn constituted a price redetermination that effected the tax basis. We feel that he was incorrect in allowing the price redetermination only for the $75 payments. As we have *308 shown, the $25 payments were such a necessary and integral part of the plan, and the two payments were so closely interrelated, that it was erroneous for the Commissioner not to also designate the $25 portions as rebates or discounts. The plan embodied a single method of accomplishment, i.e., to allow a rebate or discount. The components were twofold, i.e., the $75 payments and the $25 payments. In determining whether the plan was a rebate or discount, the Commissioner should not have separated the components.
Defendant’s brief raises some legal arguments that we feel must be answered at length in order to achieve a sound adjudication of this problem. Defendant’s first point is that § 3443(a) (2) of the 1939 Code and § 6416(b) (1) of the 1954 Code, the readjustment provisions, function solely as a means of readjusting taxable sales price, as initially determined, to take account of subsequent events which, had they occurred at the time of the sale, would have reduced the taxable sales price db initio. Defendant reasons that since these $25 payments were predicated on a later event, the actual sale of the autos to the consumer, they cannot qualify as price readjustments. There is language in the case of Waterman-Bic Pen Corporation v. United States, 332 F. 2d 711, (2nd Cir. 1964) that supports defendant’s contention that the price reduction must be one that could only have occurred at the time of the original sale. While we are not necessarily bound by this theory, we feel that it makes no difference in this case, as the $25 payments could easily have been made at the time the dealers purchased from the manufacturers. All plaintiff had to do to achieve this was to formulate the plan so that $100 was deducted from the dealer’s price at the time of the sale with the requirement that the dealer subsequently pay a bonus of $25 to its salesmen when they sell a car. Thus, at the time of the sale, the entire $100 would constitute a reduction in price. Later, if the $25 were not paid to the salesmen, the dealers would have to repay the $25 to plaintiff, which amount would then, of course, be subject to excise tax. Thus, a change in the form of the plan, without changing the substance of it, makes defendant’s theory on this point rather tenuous.
*309 Defendant’s next contention is that both, the Supreme Court and this court have previously determined that amounts paid for selling expenses may not be excluded from a manufacturer’s taxable sales price. In F. W. Fitch Co. v. United States, 323 U.S. 582 (1945) the question before the Supreme Court was whether manufacturers could exclude from the taxable sales price of its articles such amounts as it spent for advertising and selling those articles. Plaintiff had attempted to have these amounts excluded under § 619 (a) -of the Eevenue Act of 1932, predecessor of §§ 3441'(a) of the 1939 Code and 4216(a) of the 1954 Code. As previously stated, these sections defined the price on which the tax was based. In the Fitch case, plaintiff’s theory was that these expenses were encompassed in the phrase which excluded “transportation, delivery, insurance, installation or other charge,” from the computable price. (Note the identical language in §§ 3441 (a) of the 1939 Code and 4216(a) of the 1954 Code). The Court held that such advertising and selling costs did not constitute an “other charge” within the meaning of the statute. The “other charge” contemplated a charge in a like category with transportation, delivery, and insurance charges, all of which occurred subsequent to the sale. The advertising and selling expenses involved occurred prior to the sale, and therefore were properly reflected in the selling price.
Plaintiff in the case at bar seeks recovery under the price redetermination section 3443(a)(2) of the 1939 Code and section 6416(b) (1) of the 1954 Code, supra. The predecessor, of these two sections was not considered in the Fitch case. There was no issue of bona fide rebate or discount in Fitch, as there is in this case, nor could there have been such an issue in Fitch. We can think of no instance in which a manufacturer could give a bona -fide discount to itself, which would have been the result in Fitch if it had. been granted recovery on a rebate or discount theory.
Defendant maintains that we may not differentiate Fitch on this ground, as in actuality the cases are similar, since, according to defendant, for purposes of the $25 bonus the *310 salesmen in the instant case became employees of plaintiff. The logical conclusion to this supposition is that here, as in Fitch, the selling expenses would be the manufacturer’s own, incurred before the sale, and therefore includable in the tax price basis. We are, however, unable to accept the basic premise that the salesmen became plaintiff’s employees. There was no element of control or right to control by plaintiff over the dealer’s salesmen present. Plaintiff had no right to hire and fire, no right of supervision, withheld no taxes, and did not pay the salaries. Further, there is no indication that either plaintiff or the salesmen believed plaintiff to be the employer. A determination that plaintiff was the employer of the salesmen for, the purpose of the $25 payment would lack reality.
The case decided by tins court that defendant heavily relies upon is Ayer Co. v. United States, 93 Ct. Cl. 386 (1941). In that case, plaintiff Ayer Co. was a manufacturer of cosmetics and toilet preparations. Plaintiff formed a wholly owned and wholly controlled subsidiary, Vita-Bay Corporation, which acted as plaintiff’s agent in selling to the retail trade. The court held that because Vita-Bay was plaintiff’s agent, formed solely for the purpose of selling to the retailers, it was in effect the alter ego of plaintiff. It went on to say that in determining the price on which to base the excise tax, the price at which plaintiff sold to Vita-Bay was not to be considered because of the alter ego relationship. Plaintiff then contended that the court should at least allow Vita-Bay’s advertising expenses to be excluded from its price basis. The statute relied upon was, as in Fitch, supra, the predecessor of §§ 3441(a) of the Internal Bevenue Code of 1939 and 4216(a) of the Internal Bevenue Code of 1954. The court rejected this contention, as it did not believe advertising expenses constituted an “other charge” in the same category as “transportation, delivery, insurance or installation” charges.
The similarity between Ayer and Fitch, supra, is as obvious as the dissimilarity between those two cases and the case at bar. In neither Ayer nor Fitch was consideration given to the predecessor to the price redetermination section *311 of tlie statute that plaintiff in this case relies on. In neither Fitch nor Ayer could the court consider them. As we have stated, in Fitch the manufacturer could not have given a bona fide rebate to itself. The same applies to Ayer. Since in Ayer, Vita-Bay was Ayer’s alter ego, the exclusion from the price basis of Vita-Bay’s advertising expenses would have meant the exclusion of Ayer’s expenses. That result would have meant that Ayer was allowed to give itself a rebate or discount. Moreover, so far as we can tell, the selling expenses involved in Fitch and Ayer were largely expenses of selling to stores and distributors, not expenses of selling to the ultimate consumer such as are involved in this case. Congress has made a clear distinction between the manufacturer’s expenses as a manufacturer (including its own selling costs) and the expenses of selling at retail. See 26 U.S.C. § 4216(b) (1), providing that, if a manufacturer sells at retail, the tax shall be “computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof.”
The recent decision in Waterman-Bic Pen Corp. supra, is focused upon by defendant as completely analogous to this case. In Waterman-Bic Pen Oorp., supra, the court decided that the same price readjustment statute that plaintiff in this case relies upon, must be read in pari materia with the section in the Code defining sales price, and that such a reading did not wort to allow plaintiff to deduct advertising expenses from its tax sales basis. We are not necessarily obliged to follow that decision, as it is completely contrary to the decision by this court in General Motors Corp., Frigidaire Division, supra. However, we need not add to that conflict in this case. The advertising expenses of Waterman-Bic Pen Corp. and General Motors Corp., Frigidaire Division, supra, are quite distinct from the bonus plan in this case. In the advertising cases it could be said that the manufacturer was selling an advertised product, rather than the physical item alone, and that from the beginning the sales price covered both the cost of the item and of the advertising. We have here a pure rebate or discount. The Commissioner of Internal Bevenue even conceded that it *312 was a rebate or discount to the extent of the $75 payments. We have merely held that he was in error when he attempted to separate and disallow the other necessary component of the plan. This is a far cry from determining whether or not advertising expenses may constitute a rebate or discount, the issue involved in the other two cases.
Finally, defendant urges that § 316.13(d) of Treasury Regulations 46 (1940 ed.) bars the refund sought. Section 316.13(d) of the Regulations reads as follows:
§ 316.13 Discounts and adjustments, generally.
# % * * *
(d) Commissions to agents, or allowances, payments or adjustments made to persons other than the manufacturer’s vendee are not deductible from the sale price under any conditions for purposes of computing the tax.
We need only reply to this that no payments were made by plaintiff to the dealer’s salesmen. Plaintiff dealt entirely with the dealers. The subsequent payments by dealers to salesmen were part of the overall plan of rebate or discount. As we previously stated, both the $25 and $75 were necessary for the success of the plan. They cannot, therefore, be separated.
On the basis of the foregoing, we conclude that plaintiff is entitled to recover the overpayments of $131,708.78.
Defendant’s motion for summary judgment is denied, while plaintiff’s cross-motion for summary judgment is granted. Judgment is entered accordingly.